719 So.2d 568 (1998)
Valerie M. MILLON
v.
CLARION HOTEL.
No. 98-CA-0002.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1998.
Rehearing Denied October 30, 1998.
*569 Michael D. Meyer, New Orleans, for Defendant-Appellant.
Jasper N. Pharr, William F. Evans, Sr., New Orleans, for Plaintiff-Appellant.
Before KLEES, LOBRANO and MURRAY, JJ.
LOBRANO, Judge.
Defendant, PBHG-New Orleans, Inc., d/b/a Clarion Hotel, appeals a judgment from the Office of Workers' Compensation in favor of claimant, Valerie Millon. Claimant also appealed the judgment. In this judgment, the workers' compensation judge held that claimant was entitled to temporary total disability benefits from October 27, 1994 through October 5, 1995, plus medical expenses, travel expenses and penalties.
Prior to trial, the parties stipulated that plaintiff was involved in an automobile accident on April 1, 1991 and that she had a pre-existing condition when she was hired by the Clarion on May 2, 1994. In the instant case, claimant alleges that on August 18, 1994, she was bending over to make a room key at her job at the Clarion when she aggravated her preexisting back injury sustained in the 1991 automobile accident.
On appeal, defendant argues, inter alia, that the plaintiff failed to prove by a preponderance of the evidence that she sustained a job-related injury. Because we find that this argument has merit, we pretermit discussion of the other arguments.
The Louisiana Worker's Compensation Act provides that an employee is entitled to benefits if he or she receives a personal injury by accident arising out of and in the course and scope of employment. La. R.S. 23:1031. La. R.S. 23:1021(1) defines "accident" as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." In Dyson v. State Employees Group Benefits Program, 610 So.2d 953 (La. App. 1 Cir.1992), the First Circuit interpreted this definition as requiring that an injured employee be able to identify the event marking the time when one can identify an injury, but not excluding from coverage employees *570 who are "worn down by their work rather than immediately crippled by it." Id. at 956. In Dyson, the claimant was able to identify an event, i.e. a pivoting or turning movement, which immediately preceded her pain.
The claimant in a worker's compensation case has the burden of proving a work-related accident by a preponderance of the evidence. Woods v. Ryan Chevrolet, Inc., 30,206 (La.App. 2 Cir. 2/25/98), 709 So.2d 251, writ denied, 98-1169 (La.6/5/98), 720 So.2d 689, citing Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992). Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Id. at p. 4, 709 So.2d at 254.
In Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992), our Supreme Court elaborated on a worker's compensation claimant's burden of establishing a work-related accident as follows:
A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses or friends. Corroboration may also be provided by medical evidence. (citations omitted), Id. at 361.
A plaintiff's case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture. Sisk v. Martin Specialty Coatings, 28,592 (La.App. 2 Cir. 8/21/96), 679 So.2d 569, writ denied, 96-2328 (La.11/22/96), 683 So.2d 281, citing Prim v. City of Shreveport, 297 So.2d 421 (La.1974).
In worker's compensation cases, the standard for review is the manifest error/clearly wrong standard, which precludes the setting aside of a trial court's findings of fact unless they are clearly wrong in light of the record reviewed in its entirety. Matthews v. Taylor Temporary, Inc., 97-1718 (La.App. 4 Cir. 2/11/98), 707 So.2d 1021, citing Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706.
The following testimony and documentary evidence were presented at the hearing:

VALERIE MILLON
The claimant, Valerie Millon, testified that she was involved in an automobile accident on April 1, 1991. In that rear-end collision, she sustained injuries to her head, back, neck, and left arm, leg and shoulder. Her medical records pertaining to her treatment for these injuries are included as exhibits in this case. When claimant applied for a job at the Clarion in April of 1994, she said she told Clarion employees conducting the application process about her back injuries suffered in the 1991 automobile accident.
Claimant started working at the Clarion on May 2, 1994. On that date, she was still experiencing pain from the injuries received in the 1991 accident. Claimant testified that she did not have any other accident or back injury between the 1991 accident and the beginning of her employment with the Clarion in 1994. She initially worked as front office supervisor during the evening shift. The main function of the evening shift is to register guests who are checking into the hotel. She detailed the steps involved in checking a guest into the hotel; the physical activities in this process include walking and standing as well as a lot of bending over to make room keys. Prior to August 18, 1994, supervisors could spend part of their shift sitting in the back office doing their paperwork. However, due to a policy change beginning August 15th, supervisors were required to stand at the front desk for their entire shift except for breaks. Therefore, as of that date, the majority of her eight to ten hour shift was spent either walking, standing or bending over to make room keys.
Claimant stated that on August 18, 1994, she was bending down to make a key when she suddenly felt a very sharp stinging pain in her back. She said that as she continued to work, the pain kept getting worse. Claimant testified that she reported her back pain to the managers on duty, who are the managers designated to handle all problems in the *571 hotel. She claims she told them her back was hurting so much that she might need to go to the hospital. Claimant continued to work because there were so many people waiting to check into the hotel and the front desk was understaffed at the time. However, her pain became so great that she was unable to finish her shift and left to go to Charity Hospital emergency room. Claimant testified that she was pregnant at the time.
At Charity, claimant was examined by Dr. Henry Eiserloh. She said she complained of back pain which was radiating down her left leg. Claimant went to work the next day, which was a Friday, with written instructions from Dr. Eiserloh that she could return to work with the restriction that she should work from a seated position and should avoid standing or walking as much as possible. She gave these instructions to Sheila Duncan, the office manager, but Duncan did not speak to her about the incident on the 18th (Thursday) until the following Monday. Two days later, claimant met with Duncan and the assistant personnel director and was allegedly told that Dr. Eiserloh's restrictions could not be followed because if claimant were allowed to do her work while seated, the other supervisors would have to be allowed the same privilege. According to claimant, she was told she would need another statement from Dr. Eiserloh clarifying what she could and could not do on the job. She claims she was also told that the only thing the Clarion could offer her was a medical leave. Claimant noticed that the medical leave form specified that an employee had to be employed by the hotel for at least twelve months before being entitled to a medical leave. The regular leave of absence form stated that the hotel was not required to hold her job for her.
Claimant testified that she had an earlier incident at the Clarion where she experienced a sudden burning, squeezing pain in her back while bending down to make a room key. This incident occurred in either the third or fourth week of May of 1994. When this happened, claimant got off of her feet immediately and the pain became more manageable. She stated that the May incident of back pain was much less severe than the August 18, 1994 incident. She also had another episode at the end of July which was similar to the one in May. She complained to her co-workers about her pain but did not report these incidents to management.
Claimant was first examined by Dr. Roy Marrero on August 30, 1994. Up until that point, she had not told anyone that she hurt her back bending over to make a key. Dr. Marrero gave her a written statement to give to her employer which specified that she should restrict her walking and standing by taking a break every hour for about ten minutes. The Clarion personnel director told her she wanted to personally contact Dr. Marrero and get a clarified statement about claimant's restrictions. Claimant was later called by the office manager and told to return to work. She was examined again by Dr. Marrero on September 30, 1994 and he further restricted her work duties, telling her to get off of her feet as much as possible. After her October 27, 1994 visit with Dr. Marrero, he told her she could not stand for more than one hour per day. At that point, Clarion officials told her she could not work with those restrictions and that her only alternative was a medical leave. Claimant testified that her employer never asked her to fill out an accident report. At a December, 1994 visit, she said Dr. Marrero found her totally disabled. However, at a February, 1995 visit, Dr. Marrero found that she had improved and told her she could return to work. However, claimant stated she did not return to work. She saw Dr. Marrero in June after an episode of bad pain and he gave her a neck brace and suggested physical therapy but she said she did not have the money. At a September, 1995 visit, Dr. Marrero told her that if she were going to try to return to work, she needed to have her duties modified. In October, 1995, Dr. Marrero again told her she could work if she modified her duties to avoid bending, standing and walking. Claimant testified that she has not gone back to work because her back continues to cause her pain.
On cross-examination, claimant stated that on August 18, 1994, she told the manager on duty that she hurt her back but she did not fill out an accident report because she did not *572 consider this to be an accident. She said the manager on duty was Danny White but she does not know where he works or lives now. In her statement of facts prepared by claimant for the worker's compensation proceeding, she did not mention that she reported the August 18, 1994 back problem to the manager on duty. She testified that she did not think the fact that she had reported this problem to the manager on duty was significant when she prepared her statement of facts.
Claimant stated that she told Dr. Eiserloh at Charity that her back pain was being caused by the constant standing, walking and bending involved in her job. She could not explain why the Charity discharge record signed by Dr. Eiserloh did not mention anything about her complaints of back pain being work-related.
Defense counsel presented claimant with a document dated June 3, 1994 in which she made a claim to Allstate Insurance Company stating that her back problems are related to her automobile accident. This document was signed by claimant one month after beginning her employment at the Clarion. Claimant amended her claim against Allstate in November, 1995 in which she reiterated that the automobile accident caused her serious injuries. This document was dated after she had made her worker's compensation claim against the Clarion.
Claimant stated that when she began working at the Clarion in early May, 1994, she had reached the point where her back pain was manageable. When she hurt her back bending over to make a key in late May, she said the pain was different than the back pain she experienced from the accident. She also said the pain experienced in late May was more intense than the level of pain she had right before she started working at the Clarion. She admitted that her pain level had significantly improved from the time of the automobile accident in 1991 until the time she started working for the Clarion in 1994. She denied telling her co-workers, from the time she started working in May, 1994 until her last day at work in October, 1994, that her back problems were the result of either her pregnancy or her automobile accident. When claimant gave her deposition to Allstate regarding the automobile accident, she denied having had any accidents since that one. This deposition took place on August 17, 1994, one day before claimant's last incident of suffering back pain while making a key but after the two incidents in May and July. She stated at the hearing that she gave that answer because she did not realize that the May and July incidents further injured her back. She claims she did realize that bending down to make the keys was aggravating her back pain until the August 18, 1994 incident.
Claimant said that although her pain level has generally improved since she left the Clarion, it is not consistently better because there are days when the pain is much more intense. Despite her generally improved pain level since leaving the Clarion in October, 1994, claimant testified that she has not attempted to go back to work because she has been afraid to go to work because of her back pain. She stated that she is not saying she cannot work; she is saying she does not know if she can return to the type of work she used to do.

KARTRENIA BRUMFIELD
Kartrenia Brumfield testified that she was a co-worker of claimant at the Clarion in 1994. They were both front desk supervisors. She demonstrated the bending position that a person needs to assume to make a room key. She stated that claimant complained to her about back pain resulting from her automobile accident and from her pregnancy but not about any pain associated with bending over to make keys. Brumfield said claimant did not tell her about the August 18, 1994 occurrence.

SHEILA DONAHUE
On cross-examination, Sheila Donahue testified that she began her employment as a front office manager with the Clarion on August 15, 1994. She stated that she was claimant's supervisor. One change she implemented as manager was that she required the front office supervisors to spend the majority of their shift at the front desk and told them they could not conduct their supervisory duties from the back office. Donahue *573 testified that she recalled claimant bringing a physician's note to her which stated that claimant would need to work from a seated position. She told claimant she needed clarification of this physician's statement to determine exactly what she could and could not do so that claimant would not be put in a position where she could aggravate her problem. Claimant returned to work on August 24th and told Donahue that she could not reach her doctor for clarification but assured Donahue that she could perform her duties.
Claimant eventually brought in a statement from her doctor that said she could work as long as she had ten minutes per hour seated. The Clarion made this accommodation for claimant. At some point after that, Donahue had a discussion with claimant and Carol Hilliard of the personnel office to clarify the work restrictions given to claimant by her doctor.
Donahue testified that she never filled out an accident report because no accident was ever reported to her. She stated that she discussed the option of medical leave with claimant as an alternative if her doctor restricted her from doing her job. Donahue's understanding of claimant's medical condition was that she had injured her back in an automobile accident and this injury was bothering her at work. She said claimant never mentioned that she had an accident at work or that any of her work duties were causing her discomfort.
On direct examination, Donahue stated that she never received any medical documentation stating that claimant's physical restrictions were caused or aggravated by her job. Donahue was under the impression that claimant's back problems were a result of her automobile accident and pregnancy.

JONATHAN SANDOZ
On cross-examination, Jonathan Sandoz testified that he was employed by the Clarion in May, 1994 as assistant front office manager. He was claimant's direct supervisor. He stated that when Sheila Donahue became front office manager on August 18th, she enforced the hotel policy that required front office supervisors to perform their duties at the front desk and not in the back office. He prepared a memorandum for the Human Resources Department regarding claimant in which he stated that in reevaluating the front desk job responsibility, it was determined that the supervisors should spend their entire shift standing at the front desk. Sandoz stated that he never filled out an incident report or filed a report with the Office of Worker's Compensation with regard to claimant. He also stated that he never contacted any of claimant's physicians nor did he ever examine her medical records. He said he did not provide her with a physician on behalf of the Clarion and he did not ever determine the exact nature of her medical condition or take any steps to do so.
On direct examination, Sandoz stated that claimant never told him she was injured while working at the front desk or while bending over to make keys. Claimant also never told him about incidents in May and July when she allegedly hurt herself at the front desk. Sandoz testified that claimant never told him she hurt herself at work nor did Sandoz ever receive any document stating that claimant's work restrictions were caused or aggravated by her work. He stated that when he became aware that claimant's physician had restricted the amount of time which she could stand at work, efforts were made to accommodate her including allowing her to sit in the back office to work on her reports and to go to the front desk as necessary. Sandoz said that claimant complained about back pain but told him the pain was from a car accident.
Sandoz stated that claimant did not tell him she had back problems when she applied for the job and that she represented to him that she could perform the duties of front office supervisor. He said the first time he heard about claimant's back problems was when she told him she needed some time off to take care of legal matters regarding the automobile accident. Prior to August 1994 when claimant brought the statement from her doctor regarding her work restrictions, she had never complained to Sandoz about the standing involved in her job. However, he admitted that until Sheila Donahue arrived in August 1994 and enforced the policy that front office employees perform their duties at the front desk for their entire shift, *574 claimant and other employees were able to sit and stand while doing their job. He said that prior to the enforcement of this policy, claimant probably was standing for 70% of her shift yet she never complained.

BRENDA RICHARD
Brenda Richard testified that she was employed by the Clarion as Director of Human Resources between May, 1994 and December, 1994 and was still employed in that capacity as of the date of her testimony. She stated that after claimant was hired by the Clarion, she filled out a form in which she indicated that she had a previous back injury. Richard stated that she remembered claimant coming in with a statement from her doctor dated August 30, 1994 in which he restricted her from standing at work. Richard told claimant she needed clarification as to how long she had to sit so she asked for and received claimant's permission to call her doctor. Richard stated that she called the doctor who told her that claimant needed to sit for 10 to 15 minutes every two hours. Richard said the Clarion was able to accommodate that restriction. She said her recollection is that the doctor she received clarification from was Dr. Marrero. Claimant had brought in an earlier statement dated August 19, 1994 from Dr. Eiserloh but Sheila Donahue told her to bring a second statement with more clarification. It was this second statement from Dr. Marrero about which Richard called to get further clarification. Richard did not ever talk to Dr. Eiserloh nor did she speak to any doctor regarding claimant's condition between August 19th, the date of the first statement from Dr. Eiserloh, and August 30th, the date of the statement from Dr. Marrero.
Richard stated that she remembered a final meeting with claimant in which she brought in a doctor's statement which said she could no longer work unless she was able to remain seated. Richard said they had no available seated positions so she suggested that claimant apply for medical leave. Richard said claimant was ultimately placed on medical leave. Richard said she never filled out an accident report or filed a report with the Office of Worker's Compensation regarding claimant. She said she never determined claimant's exact medical condition or took steps to do so but she also stated that doing so was not her responsibility.
Richard testified that an accident report regarding claimant was filled out by Carol Hilliard[1] on January 3, 1995 and this report stated that the employer knew of claimant's injury on August 19, 1994. On the accident report, the date and time of claimant's injury was listed as unknown. It also said that "no on-the-job accident or injury was reported." In a section entitled "Purpose of Report", Hilliard wrote "possible dispute." She stated that this accident report was completed when the Clarion received a demand letter for worker's compensation benefits for claimant. She stated that she conducted an investigation in January, 1995 by talking with other employees. She said she did not do this sooner because she did not learn of the alleged accident until January, 1995. Richard said the August 19, 1994 date was put on the accident report as the date the employer knew of the injury because that was the date used in the demand letter asking for worker's compensation benefits.

DUBLIS OLIVEIDA
Dublis Oliveida testified that she worked with claimant as a front desk supervisor in 1994. She stated that she was on maternity leave when claimant began her employment in May of 1994 but she returned to work in June. Oliveida testified that claimant never told her she had an accident on the job. She said claimant told her she had back pain but said it was from a car accident which occurred before she started working at the hotel.

DR. EDMUND LANDRY
Dr. Edmund Landry, an orthopedic surgeon, conducted an independent medical examination of claimant on August 30, 1995. His examination of her neck was normal from an objective standpoint with some subjective complaints of pain. Her neck x-rays showed some degenerative changes which were not unusual for a thirty-seven year old female. His examination of her back showed *575 that it was neurologically intact. His examination ruled out nerve root compression or irritation that could be caused by herniation. Claimant had subjective complaints of back pain but her back examination was normal from an objective standpoint. Based on his clinical examination and x-rays taken of claimant after August 18, 1994, Dr. Landry's opinion is that there is no reason claimant cannot perform the duties of front desk supervisor which include long periods of standing and bending.

DR. GEORGE GILMORE
Dr. George Gilmore, a chiropractor, testified by deposition about a August 2, 1991 report written by him after treating claimant from April 4-8, 1991 for injuries suffered in an automobile accident on April 1, 1991. He stated that he did not treat claimant after that course of treatment in April, 1991. He admitted he had no knowledge of her present condition.

DR. PETER FURNO
The medical report of Dr. Peter Furno, a chiropractor, shows that his treatment of claimant occurred prior to her employment at the Clarion.

DR. ROY MARRERO
Dr. Roy Marrero, an orthopedic surgeon, testified by deposition that he first saw claimant on August 30, 1994. She reported that she was approximately eighteen and one-half weeks pregnant and had a disc problem from an automobile accident in 1991. Dr. Marrero examined claimant and his impression was a herniated nucleus pulposus or herniated disc at L4-5 on the left. He ordered an MRI which was performed on September 27, 1995. The results were normal. She also had an EMG on November 11, 1994 and this was also normal.
After Dr. Marrero examined claimant on August 30, 1994, he referred her to the Touro Pain Clinic and put her on limited duty to avoid prolonged standing and told her to return in one month. He gave her a written certificate to return to work which stated that she was restricted to limited duties which required no lifting, climbing, bending or prolonged standing. At that time, he only had the benefit of an MRI report from 1991 which showed a minor circumferential bulging of the L4-5 disc coupled with claimant's complaints of back pain. The history given by claimant to Dr. Marrero was that she was suffering from chronic back pain and the automobile accident was the source of that pain. The clinical examination showed some tenderness in the lumbar spine but nothing more.
Dr. Marrero next saw claimant on October 27, 1994. She was seven and one-half months pregnant and described her back pain as getting worse as well as increased pain in the left leg. His impression was low back pain with sciatica in the left leg. He told claimant to return after her pregnancy and he put her on modified duty. Her next visit was on December 27, 1994. Claimant was in the late stages of pregnancy and had swelling in her legs. Dr. Marrero felt that evaluation would be better after delivery and instructed her to return at that time.
Claimant returned on February 7, 1995 and was five weeks postpartum. She reported continued pain in the rear of her left calf and left thigh and back. His impression was that she possibly had an L4-5 disc problem and he referred her to Dr. Leslie Hightower for diagnostic testing. He next saw claimant on June 1, 1995. She complained of severe pain in the base of her neck and her back showed some slight tenderness in the lower lumbar spine area only. Dr. Marrero started claimant on physical therapy for her neck and back, gave her medication and told her to return.
Dr. Marrero next saw claimant on September 14, 1995. She was still complaining of back pain so he ordered another MRI of her thoracic and lumbar spine. He next saw her on October 5, 1995. Claimant was having headaches and pain in the back and neck area. Her MRI results were normal. His impression was chronic cervical spine sprain and lumbar spine sprain. He put her on modified duty to avoid bending, gave her medication and told her to return. Claimant never returned. Dr. Marrero said he felt claimant's complaints were more consistent with a sprain type of injury in her neck and back rather than a disc injury. He said that most sprain injuries resolve in approximately *576 six weeks. As of claimant's last visit in October, 1995, she had pain to palpitation but no disc problems. He said he would try to limit her duties until he feels she is well. Dr. Marrero stated that the only incident claimant told him about when discussing her back pain was the 1991 automobile accident.
When asked by claimant's counsel if a person's pre-existing back pain from an automobile accident could be aggravated by activities such as continuous standing and repetitive walking, reaching and bending, Dr. Marrero responded "I suppose that's a possibility." When asked again if prolonged standing could aggravate claimant's back pain, he said "It's possible, along with the pregnancy." When asked if the pregnancy and work conditions were contributing to or aggravating claimant's condition, Dr. Marrero said "It could possibly, yes." He said he recommended that claimant modify her duties to avoid bending because this type of activity would aggravate chronic low back pain. Dr. Marrero said he characterized claimant's back pain as chronic only because according to her history as told by her, the pain had lasted longer than one year. Dr. Marrero stated that claimant was not permanently disabled from working.

REPORT OF DR. LESLIE HIGHTOWER
Dr. Marrero referred claimant to Dr. Leslie Hightower, a neurologist, for electromyography and nerve conduction studies. On his November, 1994 consultation report, Dr. Hightower stated that the test results were normal and noted under the section entitled "Clinical Information" that claimant had chronic lower back pain with radiation into the left leg since a motor vehicle accident which occurred in April, 1991. His notes show that claimant reported that she worked for the Clarion Hotel but is currently disabled. However, no mention is made in these notes of any work-related accident which contributed to or aggravated her back pain.

CHARITY HOSPITAL EMERGENCY ROOM
Claimant testified that when she hurt her back bending over to make a key on August 18, 1994, she initially continued working but later left before her shift ended and proceeded to the Charity Hospital emergency room. The emergency room report shows that claimant arrived in the early morning hours of August 19th and was seen by Dr. Henry Eiserloh. His diagnosis was low back pain. In the section of the discharge record marked "History/Observations," Dr. Eiserloh noted that claimant was four and one-half months pregnant and had no recent trauma. He noted several times that claimant did report an "MVA", obviously an abbreviation for motor vehicle accident, approximately two years earlier and that she has suffered chronic back pain since that time. He noted that claimant told him she stands at work all day and that her pain worsens at the end of the day but is relieved with rest. His impression was chronic low back pain secondary to the automobile accident impact. Dr. Eiserloh gave claimant a note for her employer which stated that she needed to work from a chair due to her back condition. Nowhere in the Charity emergency room report is there any reference to claimant being injured at work on August 18, 1994 while bending over to make a key.
After reviewing all of the evidence presented, we conclude that claimant did not prove by a preponderance of the evidence that she suffered a work-related accident. If proven, the alleged incident of August 18, 1994 as described by claimant could have met the definition of "accident" under R.S. 23:1021(1). However, the evidence refutes that such an incident actually occurred. In sum, claimant did not carry her burden of proof.
The claimant testified that she suffered a work-related accident on August 18, 1994 but no other witness or item of documentary evidence corroborates that testimony. Claimant states that she reported this accident to a hotel manager but that person did not testify. Two of claimant's supervisors and the Director of Human Resources for the Clarion all stated that claimant never told them that she injured herself at work while bending over to make a room key. Two of claimant's co-workers testified that claimant complained of back pain resulting from an automobile accident and never mentioned to them that she had injured herself at work. Claimant did not file an accident report despite *577 hotel regulations requiring employees to do so if injured on the job.
An accident report regarding this matter was filled out four and one-half months after the alleged accident by an employee in the hotel personnel office and was done so then only in response to claimant's demand for worker's compensation benefits. The evidence demonstrates that this demand made by claimant on December 30, 1994 was the first notification hotel management had of claimant's alleged accident. In her reasons for judgment, the judge finds that the December, 1994 demand for worker's compensation benefits was the defendant's first notice of claimant's allegations of a job-related injury. The accident report specified that no on-the-job accident or injury was ever reported. In the section entitled "Date Employer Knew of Injury," the date August 19, 1994 is listed because, according to the hotel Director of Human Resources, this was the date used by claimant in her demand for worker's compensation benefits. However, the report also states that the date and time of the injury are unknown and that the injury did not occur on the employer's premises. The purpose of this report was listed as "possible dispute."
With regard to the medical evidence, the Charity Hospital emergency room report of August 19, 1994 shows that claimant told Dr. Eiserloh that she related her chronic back pain to the 1991 automobile accident and did not have any recent trauma. The mere fact that claimant went to the emergency room several hours after she allegedly hurt herself at work does not establish that a work-related accident occurred. In fact, claimant's denial of recent trauma to Dr. Eiserloh preponderates heavily in favor of the non-occurrence of an accident hours earlier.
Dr. Hightower's November, 1994 report shows that claimant related her chronic back pain to the 1991 automobile accident. In his notes from his examination of claimant, Dr. Hightower wrote that she worked for the Clarion but no mention is made of any work-related accident.
Claimant relies heavily on Dr. Marrero's testimony that activities such as continuous standing, repetitive walking, reaching and bending could possibly aggravate a person's pre-existing back pain. This argument overlooks the fact that this opinion was simply a response to hypothetical questions posed by claimant's counsel about certain types of activities and that nowhere in Dr. Marrero testimony did he state that claimant reported a work-related accident to him. Dr. Marrero's statements about certain activities possibly aggravating a pre-existing back condition relate to the issue of the causation of the alleged disability rather than the issue of whether or not a work-related accident actually occurred. Dr. Marrero treated claimant for over one year but in his testimony, he stated that the only incident claimant ever mentioned when discussing her back pain was the 1991 automobile accident. Even in her history given to Dr. Marrero on August 30, 1994, claimant reported that the source of her chronic back pain was the automobile accident.
Applying the test of Bruno v. Harbert International, Inc., supra, we find that the claimant's testimony alone was not sufficient to discharge her burden of establishing that a work-related accident occurred. Even assuming that no evidence discredits or casts serious doubt upon the claimant's version of the incident, the claimant did not satisfy the second element required, i.e. that her testimony be corroborated by the circumstances following the alleged incident. The claimant's testimony that she suffered a work-related accident on August 18, 1994 was not corroborated by any of the testimony or medical evidence. Given this complete lack of corroboration, claimant failed to discharge her burden of proving that a work-related accident occurred. See, Burns v. Beauregard Nursing Center, 94-131 (La.App. 3 Cir. 10/5/94), 643 So.2d 443. The worker's compensation judge erred in concluding otherwise.
For these reasons, we reverse the judgment of the Office of Worker's Compensation and dismiss Valerie Millon's claim for worker's compensation benefits.
REVERSED.
NOTES
[1] Hilliard did not testify.