760 So.2d 513 (2000)
Richard K. ZIEGLER, Sr.
v.
BAGBY CONSTRUCTION/LWCC.
No. 99-CA-1120.
Court of Appeal of Louisiana, Fifth Circuit.
April 25, 2000.
Writ Denied June 30, 2000.
*516 Frank J. D'Amico, Jr., Kim Houng A. Tran, New Orleans, Louisiana, Attorneys for Appellant.
Ted Williams, Baton Rouge, Louisiana, Attorney for Appellee.
Panel composed of Judges CHARLES GRISBAUM, Jr., SOL GOTHARD and MARION F. EDWARDS.
EDWARDS, Judge.
Claimant/appellant Richard K. Ziegler appeals a judgment of the Office of Worker's Compensation which found that he was not injured in an auto accident which arose out of and in the course of his employment with defendant Bagby Construction Company. For the reasons to follow we reverse.
The accident occurred on November 3, 1997. At the time of the accident, Ziegler had been framing a home on Sena Drive in Metairie. When problems developed putting a roof on the construction, Ziegler drove to Kenner to see if some workers whom he knew were available to complete the roof. Ziegler was rear-ended while on this undertaking and suffered injuries. The issue before us is whether at the time of the accident, Ziegler was on a mission which arose out of and in the course and scope of his employment with Bagby.
Valerie Linn testified that she and her husband hired Greg Ayo's Frame Works to frame an addition to her Sena Drive home and fix the roof. The addition required replacement of the old roof and a partial new roof. When Ziegler worked on the house, either Ayo or Bagby would show up in the morning with the tools and would tell the workers what had to be done for the day. Linn trusted Ziegler more than the other workers, including Bagby. She believed that Ziegler was very professional, and that Bagby just wanted to hurry the job along and get paid. Linn did not know that Babgy was a subcontractor.
After one weekend when it rained, much of the work had been ruined and had to be redone. Linn insisted that a roofer complete the roof.
Ayo testified that he is a general contractor who was hired for the job at the Linn residence. Depending on what is required, sometimes Ayo uses his own men and sometimes he subcontracts out jobs. He subcontracted the framing of the Linn house to Bagby Construction. Although he knew Ziegler, Ayo understood that Ziegler was an employee of Bagby. Ayo paid Bagby and Bagby paid his own employees. During the framing job on Sena drive, Ziegler was on the site as much as, if not more than, anybody else. The original roofers hired by Ayo were not able to do the job and because the Linns were familiar with Ziegler, they suggested him for the job. After it rained on the weekend before the accident, the Linns were upset at the resulting damage. Ayo tried to reach Ziegler but could not do so by phone.
Ziegler came to the office Monday morning. At that time, Ayo, who had not reached Ziegler over the weekend, was trying to get in touch with Quality Roofers to see if they were available for the job. The roofing problem was discussed, but Ayo was reluctant to hire Ziegler alone. Ayo indicated that if Ziegler wanted to do the roof, he would have to find other roofers to help him. For Ziegler, the job hinged on whether or not he could find the men to do the work. If Ziegler had found the men, further discussion would have taken place. Although Ayo and Ziegler discussed the job, a price was never agreed upon. According to Ayo, when Ziegler left the office to find other workers, he was still working for Bagby.
*517 Bagby was not expected to do anything on the roof except to frame and paper it. According to Ayo, it was not necessary for the roof to be completed in order for Ziegler to finish his job for Bagby. Ziegler was going to complete the framing job for Bagby whether or not he got the roofing job.
Ziegler testified that at the time he was hired by Bagby as a framer, he had an inactive company which had no private jobs. He was on the Sena jobsite for two weeks before the accident. On that morning, he went to the site. The day's work was to build a soffit and facia and tie it into the existing home. No one showed up, so he went to another site where he found Bagby. Bagby told him that Ayo wanted to see him. Bagby got into his truck and Ziegler followed him to the Frame Works office. Before leaving the construction site, Ziegler helped lift some plywood to the second floor.
At the office Ziegler learned that Ayo was looking for men to do the roof on Sena Drive. Ziegler said he knew of some men in Kenner that he might be able to get to help (Ziegler). Ziegler understood he was still working by the hour. Nothing was said about him contracting the job. He understood he was still working for Bagby to frame and supervise a crew. He was asked by Ayo and Bagby to find some roofers. Ziegler found the workers but they had already started something else. Ziegler called Ayo but did not speak to him. On the way back to the Sena jobsite he got into the accident. Following the accident he was temporarily disabled from working as a carpenter, and did not begin working again until November 18, 1998. At that time he began supervising a construction job for his brother.
It wasn't uncommon to get instructions from both Ayo and Bagby. Ziegler understood he was working for them when he left, but if he had found workers he would have subcontracted the job.
In his own company, Ziegler did framing and roofing. He had done some work for Bagby once before. Employment with Bagby was a job to job deal, depending on whether or not there were jobs available. A job at Burger King was mentioned and Ziegler believed that Bagby mentioned it to keep him on. Although he was only doing the framing on Sena, he was the supervisor of the whole job. He was never informed by Bagby that there was no more work.
Ziegler requested compensation from both Frame Works and Bagby. Frame Works filed a Motion for Summary Judgment averring that Ziegler was not its employee at the time of the accident. In Ziegler's opposition to the motion, the deposition of Stanley Bagby was filed into the record. In that deposition, Bagby testified that Ziegler became his employee about 4 weeks before the accident. Although Ziegler had a roofing business, he asked Bagby for some temporary work. Ziegler earned $12 an hour for as many hours as he wished, averaging around 50 hours per week. Bagby had two jobs going at one time and Ziegler brought two people from his crew to work also.
The weekend before the accident, Bagby hired another permanent employee because Ziegler was supposed to be temporary. On the morning of the accident, Ziegler showed up late for work and Bagby had already left to go to Mr. Ayo's office. Ziegler went to Ayo's office later, at which time Bagby explained that he no longer needed Ziegler but that Ayo needed a framing crew on another job. According to Bagby, Ziegler was going to see if he could pull his men off another job and do the framing. Later in the deposition, Bagby stated that he thought Ayo was going to subcontract the roofing job to Ziegler. A couple of days later, Ziegler called Bagby to inform him of the accident.
All dealings with Ziegler were verbal. There were no contracts and no paychecks. Ziegler was paid in cash and no taxes were withheld. Ziegler provided his own skill saw, but Bagby provided all of the other *518 tools. When Ziegler left Frame Works, Bagby thought he was going to the Sena Drive site to do the roof. Bagby did not testify at trial.
The trial court granted summary judgment in favor of Frame Works on November 10, 1998 which judgment has become final. In granting the present judgment on appeal, in favor of Bagby, the trial court gave no oral or written reasons.
In a worker's compensation case, an employee who receives personal injury arising out of and in the course of his employment is eligible for benefits.[1] All plaintiffs bear the burden of proof that the accident in question resulted from or arose out of employment.[2] Since the plaintiff bears the burden of proof on that issue, there is an implicit presumption against the plaintiff and in favor of the employer.[3] The burden of proof is a preponderance of the evidence.[4] Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not.[5] It is axiomatic that coverage is liberally construed.[6]
The testimony of both Ziegler and Ayo show that at the time Ziegler left Ayo's office, Ziegler was still employed by Bagby. Ziegler testified that he had not been fired and this testimony is corroborated by that of Ayo, who stated that Ziegler was supposed to complete the job for Bagby. Ziegler proved by a preponderance of the evidence that at the time of the accident, he was Bagby's employee. The central issue is whether the accident resulted from or arose out of his employment with Bagby.
According to the testimony, Ziegler was attempting, at the request of Ayo, to find extra men to complete the roofing job. It is apparent from the testimony that Ziegler did so with Bagby's implied permission.
Ziegler proved the following facts: the roof was critical to Ayo's contract with the Linns; Ziegler took directions from both Ayo and Bagby; he had already reported to work for Bagby when Bagby told him to report to Ayo's office on the morning of the accident; Ziegler was injured during normal working hours; and Bagby was silent when Ziegler offered to look for other roofers.
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee.[7] The principal criteria for determining course of employment are time, place and employment activity.[8]
Most of the cases involving determination of whether an accident causing injury to an employee occurring during a time of travel took place within the course of employment have involved accidents which occurred while the employee was on his way to or from work, or on his lunch hour. As a general rule, such accidents are not considered to have occurred within the course of employment. Some jurisprudential exceptions *519 to that rule have been established over the years; those exceptions were recently summarized by the Louisiana Second Circuit Court of Appeal [in Yates] as follows:
1) If the accident happened on the employer's premises;
2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;
3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;
4) If the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied;
5) If the employee was hurt while traveling to and from one work site to another;
6) If the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee, also known as the threshold doctrine; and,
7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee.[9]
We find that Bagby's silence and inaction at the discussion between Ziegler and Ayo constituted his implied consent to the mission. It is apparent from the testimony that at least insofar as the particular parties to this case are concerned, the lines of supervision and control were loosely drawn. Ziegler took directions from both Bagby and Ayo. Although shingling the roof was not specifically part of Bagby's contract with Ayo, when Bagby told Ziegler to report to Ayo on the morning of the accident, Bagby was clearly aware that fixing the roof was the reason for the meeting. In fact, Ziegler was obeying Bagby by seeing Ayo. Under these circumstances, Bagby cannot now claim disinterest in those proceedings. We find that the trip was in the course of Ziegler's employment with Bagby.
The terms "arising out of" and "in the course of" constitute a dual requirement. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment.
The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated.[10]
The two elements should be understood as closely intertwined issues that may usefully illuminate the common sense practical question whether the employee's injury bears some significant relationship to the employer's business operation.[11] The arising-out-of requirement is designed to separate accidents which may be attributed to employment risks, which are compensable, from accidents which may be attributed only to personal risks.[12] An employee's personal mission and his employer's business are not necessarily *520 mutually exclusive.[13] The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment.[14] An accident has also been held to arise out of employment if the conditions or obligations of the employment caused the employee in the course of employment to be at the place of the accident at the time the accident occurred.
The fact that Ziegler may ultimately have been able to contract the roofing job does not, under the present facts, mean that the trip did not initiate or arise out of his employment. As stated previously, the exact relationship between all these parties was never rigidly delineated. The employer or person in authority has explicit power to enlarge the normal course of the employee's employment by assigning particular tasks or duties.[15] In the present case, although Bagby did not specifically ask Ziegler to make the trip, his silence and inaction constitutes acquiescence. We note that the lack of a roof caused much damage to the existing structure, affecting some of the work already done by Bagby. Under all these circumstances, we find that the mission arose out of Ziegler's employment with Bagby.
In a worker's compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Therefore, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong.[16] In the present case, the trial court committed manifest error in its determination that the accident did not arise out of and in the course of Ziegler's employment with Bagby and that judgment must be reversed.
Ziegler visited Dr. Courtney Russo, an orthopedist, on the day of the accident. He related the details of the accident to Dr. Russo, stating that his vehicle had been rear-ended. Ziegler had severe spasms in the cervical area and had very limited motion without increasing pain. He suffered from spondylolisthesis and had a defect called spina bifida culta. The diagnosis at that time was cervical and lumbrosacral sprain. He was given muscle relaxants and pain medication. Because of increasing pain in the neck and head, along with intermittent numbness and tingling in the left hand, Dr. Russo recommended physical therapy and Ziegler was placed on no-work status. In April of 1998, an MRI was ordered while Ziegler continued to be disabled from work. The MRI showed a congenital fusion at the C2-3 cervical level. Ziegler continued on pain medication and Dr. Russo recommended a consultation with a neurologist. On his last visit to Dr. Russo in June of 1998, Dr. Russo opined that Ziegler was temporarily totally disabled from employment as a carpenter, although not totally disabled from any type of employment. A functional capacity evaluation could be performed to determine the proper type of work which he could undertake. Dr. Russo assigned a 25% disability rating to Mr. Ziegler. Prior to the accident, Mr. Ziegler's disability rating was 20% due to his pre-existing condition; the extra 5% was attributable to the accident. Dr. Russo felt that the accident aggravated Ziegler's pre-existing condition of spondylolisthesis. Ziegler had not been discharged as of the last date Dr. Russo saw him, and further diagnostic *521 tests were recommended. Bagby presented no medical evidence. Based on the testimony of Ziegler and Dr. Russo and in the absence of any evidence to the contrary, we find that Ziegler sustained a compensable injury, and that he was temporarily totally disabled from November 7, 1997 through November 18, 1998 when he returned to work.
Ziegler testified that he was paid $12.00 per hour for 10 hours per day, or $600.00 per week. Under La. R.S. 23:1221, Ziegler is entitled to benefits in the amount of 66 2/3 % of his wages during the period of his disability. He returned to work on November 18, 1998, and is therefore entitled to benefits in the amount of $399.60 per week from the date of the accident, November 3, 1997 through November 18, 1998, plus legal interest from the due date of each installment.[17]
LA R.S. 23:1201(F) grants a claimant the statutory right to penalties and attorney fees for all unpaid compensation and medical benefits.[18] The section does not apply if the claim is reasonably controverted. The test to determine whether the employee's right to benefits was reasonably controverted is whether, given the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.[19] We find that Bagby did not have sufficient factual information to reasonably counter the claim. Bagby was aware that Ziegler had been injured in an accident, and we have found that he was clearly in the course and scope of employment. The record does not disclose a basis for a reasonable belief that benefits were not due. An unjustified belief that an employee's injury did not result from an accident does not excuse failure to pay worker's compensation benefits.[20]
However, we are unable to determine a reasonable amount of attorney fees from the record and remand the matter to the court for determination of penalties and attorney fees due.
Although Ziegler admits that he settled his third party lawsuit with the tortfeasor/driver of the automobile which hit him, the record is devoid of any other evidence *522 of that settlement, including any costs and attorney fees incurred. Perhaps more importantly, there is no evidence of the date that suit was settled so as to determine whether any rights of Ziegler to any future benefits was affected. We remand to the trial court for consideration of this issue, noting that under La. 23:1102(B), Ziegler may buy back his right to future compensation. We further note that since Bagby did not pay any compensation, it is unnecessary for Ziegler to repay "the total amount of benefits ....previously paid."[21]
For the foregoing reason, the judgment of the trial court is reversed.
IT IS ORDERED, ADJUDGED AND DECREED that Richard K. Ziegler was temporarily totally disabled from November 7, 1997 through November 18, 1998 and that he is entitled to two-thirds of his stipulated wages of $12.00 per hour for a 50 hour work week as well as payment of all medical expenses. The matter is remanded to the hearing officer for determination of penalties and attorney fees due, as well as for determination of the issue of future compensation benefits as discussed in this opinion. Costs of this appeal are taxed to Bagby.
REVERSED AND REMANDED.
NOTES
[1] La. R.S. 23:1031.
[2] O'Regan v. Preferred Enterprises, Inc., 98-CC-1602, (La.6/29/99), 737 So.2d 31, 36.
[3] Id.
[4] Bruno v. Harbert International, Inc., 593 So.2d 357 (La.1992); Millon v. Clarion Hotel, 98-0002 (La.App. 4th Cir. 9/16/98), 719 So.2d 568, 570, writ denied 98-C-2973, (La.1/29/99), 736 So.2d 836.
[5] Id.
[6] O'Regan v. Preferred Enterprises, Inc., supra, p. 36.
[7] Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349, (La.1992).
[8] Id., at p. 349; see also Mitchell v. Brookshire Grocery Co., 26,755 (La.App. 2nd Cir. 4/5/95), 653 So.2d 202.
[9] Bolton v. Tulane University of Louisiana, 96-1246 (La.App. 4th Cir. 1/29/97), 692 So.2d 1113, 1121; writ denied 97-C-1229, (La.9/26/97), 701 So.2d 982 rehearing denied 701 So.2d 1341 (La.10/17/97).
[10] Guillory v. Interstate Gas Station, 94-1767, (La.3/30/95), 653 So.2d 1152.
[11] Tarver v. Energy Drilling Co., 26,233 (La. App. 2nd Cir. 10/26/94), 645 So.2d 796.
[12] Id. P.1113; Mundy, supra, p. 349.
[13] Bolton, supra; Jepsen v. B-Con Construction Co., 475 So.2d 112, 115-16 (La.App. 2d Cir.1985), citing Thomas v. RPM Corporation, 449 So.2d 18 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La.1984).
[14] Mundy, supra, p. 349.
[15] Lewis v. Teacher's Pet, Inc., 621 So.2d 867, (La.App. 3 Cir.1993).
[16] Smith v. Louisiana Dept. of Corrections, 93-1305, (La.2/28/94), 633 So.2d 129; Woodrum v. Olive Garden Restaurant 99-130 (La. App. 5th Cir. 5/19/99), 735 So.2d 911.
[17] McLaughlin v. Hill City Oil Company/Jubilee Exxon, 97-577 (La.App. 3rd Cir. 10/8/97), 702 So.2d 786, writ denied 97-2797 (La.2/13/98), 706 So.2d 994; Kirn v. East Jefferson Hosp., 96 0838 (La.App. 1st Cir. 2/14/97), 691 So.2d 127.
[18] La. R.S. 23:1201(F) (in pertinent part): Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:

(1) Such penalty and attorney fees shall be assessed against either the employer or the insurer, depending upon fault. No workers' compensation insurance policy shall provide that these sums shall be paid by the insurer if the workers' compensation judge determines that the penalty and attorney fees are to be paid by the employer rather than the insurer.
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
[19] Maggard v. Boh Bros. Const. Co. 97-1177 (La.App. 5 Cir. 4/15/98), 712 So.2d 247, citing Watson v. Amite Milling Co., Inc., 560 So.2d 902, 906 (La.App. 1 Cir.), writ denied, 567 So.2d 614 (La.1990), and Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363, 367 (La.App. 3 Cir.1985).
[20] Cochennic v. Dillard's Dept. Store Warehouse, 95-705 (La.App. 5th Cir. 1/17/96), 668 So.2d 1161, 1167, writ denied 96-0419, (La.3/15/96), 660 So.2d 417; Kortz v. Colt Energy Services, Inc., 97-159 (La.App. 5 Cir. 7/29/97), 698 So.2d 460, 468.
[21] La. R.S. 23:1102(B); Triche v. Regional Elec. & Const., Inc., 95 0105 (La.App. 1st Cir. 10/6/95), 671 So.2d 425, 433.