804 So.2d 120 (2001)
Clayton R. PARKER, Jr.
v.
ADM MILLING COMPANY.
No. 01-CA-649.
Court of Appeal of Louisiana, Fifth Circuit.
November 27, 2001.
*122 Alan G. Brackett, Stephen M. Huber, New Orleans, LA, Attorneys for Appellant.
William R. Mustian, Metairie, LA, Attorney for Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and CLARENCE E. McMANUS.
MARION F. EDWARDS, Judge.
Appellant Archer Daniels Company (ADM) appeals a judgment of the Worker's Compensation Office awarding benefits, penalties and attorney fees to appellee Clayton R. Parker. We affirm.
Mr. Parker filed a claim in the court alleging that ADM refused benefits following a work-related accident which occurred on October 2, 2000. ADM contested the claim, alleging that Mr. Parker had forfeited his right to compensation under LSA-R.S. 23:1208, by making a false statement to its insurer relative to his condition. Following trial on the merits, the judge found that Mr. Parker was entitled to temporary total disability benefits in the amount of $301.14 per week from October 2, 2000 through November 2, 2000, and that he was entitled to supplemental earnings benefits from November 2, 2000 through the time of trial. It was also held that ADM was responsible for payment of the lumbar surgery recommended by his treating physician, that Mr. Parker did not violate LSA-R.S. 23:1208, and that he was entitled to statutory penalties in the amount of $2000.00 as well as attorney fees of $3,500.00. It is from this judgment that ADM appeals.

TESTIMONY AND EVIDENCE
At the time of trial, Mr. Parker was forty-one years old and had been employed at ADM for approximately twenty-one years. He held the position of miller, which in addition to grinding wheat, involved climbing ladders, repairing certain equipment, bending and lifting between fifty and seventy-five pounds of ingredients as often as 14 or 15 times a day. Before the October, 2000 accident, he was having no problem with his back. On the day of the accident, Mr. Parker made some repairs on his equipment and in stepping off a ladder, he missed a step, felt his left leg *123 come up from underneath, and felt a snap in his back. His superintendent took him to the hospital where he was given painkillers and told to return for x-rays.
While he was recuperating, he laid on his sofa with a heating pad, occasionally taking his children to the stable in order to take care of his animals. Mr. Parker did not return to work until November, and returned only because he was told he would lose his job if he did not do so. At that time, he was on light duty, watching safety films and moving around as needed. He has not worked as a miller since the accident. He saw Dr. Robert Steiner about a week after the accident and is still under that physician's care. He has a slipped disc and receives painkillers. He has been told that he needs surgery. Mr. Parker stated that the painkillers make him sleepy and he can't think well while taking them. He averred that he cannot bend over much at this time or walk far without taking a break, and he continues to have pain. He has muscle spasms and has to change positions often when sitting or standing. Mr. Parker sometimes misses work because of the pain.
About two weeks after the accident, claims adjuster Ms. Joyce Ruff came to the house to take his statement. During this period there were times when he couldn't get up off the sofa except to go to the hospital, and told Ms. Ruff that he had to lay on his heating pad all day. At that time he was taking Vicodin. When asked on cross-examination why he was at his stables two days after the statement was taken, Mr. Parker reiterated that at times he could move and at times he could not. In a deposition taken in January of 2000, Mr. Parker deposed that during the one month period in question, he barely got around occasionally to go to the doctor, and that his wife brought his son to the stables. At the deposition, Mr. Parker had not complained that the medication prevented him from answering correctly. He testified that he did not tell anyone an untruth in order to get compensation.
Mrs. Parker testified that during the month in which he was not working, her husband had good days and bad days, but didn't do much. He has not been able to ride his horses since the accident. When he goes to the stable he watches but cannot touch the horses. He has trouble sleeping through the night, walking and getting into chairs.
Ms. Joyce Ruff, claims supervisor for ADM, testified that she took Mr. Parker's statement at his home in October, 2000. At that time she explained that she was there to find out what happened and how he was doing. She did not explain that she was there to take a recorded statement for compensation benefits. Mr. Parker seemed capable of giving his statement and answered her questions directly. He told her that the only thing he could do was to lie on the sofa on his heating pad. She stated that Mr. Parker was not paid compensation benefits because he lied to obtain benefits. A clerk in the office transcribed the statement, which Mr. Parker was not given the opportunity to review for accuracy. Ms. Ruff testified that Mr. Parker's benefits were denied because of the contradictory information obtained in the statement.
Also admitted into evidence without objection were investigation reports and a surveillance video showing Mr. Parker at the stables on one occasion, watching as others performed some chores. The date of the video is October 21, 2000. In another portion of the video taken on December 2, 2000, he was walking and looking periodically into a parked truck.
ADM bases its allegations of fraud on the statement taken by Ms. Ruff, statements made in Mr. Parker's deposition, *124 and on the report of his treating physician, Dr. Robert Steiner.
The relevant portion of Mr. Parker's statement is as follows:
Q. Are you able to do anything that you did before?
A. Huh I know I will be able to do you know but I can't do nothing right now.
Q. Yeah that's what I'm talking about right now are you able to do anything cause the Dr. says you're off work, you're not able to do anything so are you able to do any of your normal chores or getting around at a(sic).
A. No, ma'am.
Q. So basically the only thing you can do is just lay?
A. Lay around look at TV a little bit.
. . . .
Q. Okay, so basically since the incident you haven't been able to do anything but lay and take your pain medicine, on your heating pad?
A. Right, yes ma'am.
Q. You haven't been able to get out and ride your horses or? (sic)
A. No, ma'am.
Q. Or anything like that?
A. No.
The transcription does not indicate that Mr. Parker reviewed or signed it. In his deposition taken on January 18, 2001, Mr. Parker stated that before the accident, he rode his horse and was able to clean the stables, but has been unable to do so since then. He stated that for about a month after the accident:
A. "... I barely get (sic) around every now and then, go to the doctor and you know, that's about it."
Q. "I thought that when your accident first happened, you really didn't leave the house for a couple of weeks except to go to the doctor?"
A. Well, I had to leave the house a few times to go to the doctor and I would stop off at the bar and pay my little tab owed over there, and that's about it.
Q. Anything else other than those?
A. Bring my son to the stable. But not since I got-during that time, my wife brought my son to the stable.
Q. Those first few weeks after the accident?
A. Right.
Q. Because I assume back then you weren't driving?
. . . .
A. No, sir, my wife was bringing me around.
Q. How long did that last?
A. A good month.
. . . .
Q. And you go to the stables every once in a while to bring one of your kids there?
A. My kids, one of my kids, yeah.
In the medical report, admitted into evidence, ADM relies on the following statement in a letter to ADM from Dr. Steiner dated October 25, 2000: "he is not released for work as he is not even able to sit up, according to his history."

LAW AND JURISPRUDENCE
ADM relies on LSA-R.S. 23:1208 in denying benefits to Mr. Parker. That statute reads, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . . . .

*125 E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
In discussing the above cited statute, the Louisiana Supreme Court has noted that it is broadly worded, and does not require that an employee be put on notice of the consequences of making false statements.[1] The only requirements for forfeiture under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits.[2] Because § 1208 is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions.[3] False statements that are inadvertent or inconsequential will not result in forfeiture.[4] The issue of whether an employee has forfeited his right to worker's compensation benefits is a question of fact that should not be disturbed on appeal absent manifest error. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the factfinder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse.[5]

ANALYSIS
In its reasons for judgment, the court reviewed the transcription of the statement submitted by ADM and found that numerous unexplained handwritten corrections and deletions had been made in it. The court found that the adjuster's leading questions "were specifically referring to `right now' and the adjuster encouraged the claimant's statement that he was unable to do anything by remarking that `the doctor says you're off work, you are not able to do anything'". It was held that the statements made to the adjuster were not willful, false statements made for the purpose of obtaining compensation benefits. The court also determined that ADM did not reasonably controvert the claim and did not establish that non-payment resulted from conditions over which they had no control.
ADM urges that the trial court failed to consider any evidence regarding Mr. Parker's alleged misrepresentations to Dr. Steiner and to its counsel in his deposition, and that the crux of its case was these successive misstatements. By examining only the statement made to Ms. Ruff, ADM avers that the fact finding process was interdicted and a de novo review of the evidence by this court is required.
*126 When a trial court makes a consequential error in the exclusion of evidence, no weight should be accorded the judgment of the trial court.[6]
The assertion by ADM that the trial court failed to consider the statement made to Dr. Steiner is belied by the court's discussion, in its reasons, of that physician's report. Further, the failure of the trial court to specifically refer to the deposition does not compel the conclusion that that testimony was excluded from consideration, but rather that the court did not give much weight to the evidence. Considering the nature of the deposition statements, we cannot find the court erred in so doing. The exchange quoted above discloses that Mr. Parker stated he did not drive for approximately one month after the accident and that his wife brought his son to the stables, while the investigative report indicates that he drove on October 21. We note that the ability of Mr. Parker to drive has not been demonstrated to be a substantial factor in his ability to return to his employment as a miller. The lack of precision in Mr. Parker's estimate is a misstatement of little significance, and does not rise to the level of a false representation. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits.[7] Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.[8] In the absence of a consequential error in the exclusion of evidence, a de novo review is not mandated in this case.
We find no manifest error in the determination by the trial court that Mr. Parker did not violate R.S. 23:1208. It is apparent that Dr. Steiner's statement, that Mr. Parker was not released for work because "he is not even able to sit up according to his history", refers to an earlier notation in that same letter: "He is complaining of back pain relieved only when he lies down. Sitting aggravates his symptoms." Mr. Parker rather consistently alleged that sitting, standing, or walking caused back pains, and we see nothing inherently false in the statements contained in the medical report. The record discloses that the thrust of ADM's refusal to pay benefits involves the statement to Ms. Ruff, as she herself testified at trial. We concur with the refusal of the trial court to accept wholesale an unsigned statement not made available for review and/or acceptance by Mr. Parker. It is replete with misspellings and incomplete sentences as well as partial (indecipherable?) questions and responses. R.S. 23:1208 does not penalize any declaration which contains inaccuracies. Rather, it serves to punish a false statement deliberately made for the purpose of obtaining or defeating any payment. Its purpose is to prevent and discourage fraud in relation to workers' compensation benefits.[9] Considering all the evidence adduced at trial, we find no error in the finding by the trial court that R.S. 23:1208 was inapplicable in the present case.
An award of attorney's fees in a workers' compensation case is essentially penal in nature, as it is intended to discourage indifference and undesirable conduct by employers and insurers. Attorney's fees should not be imposed in doubtful cases, where a bona fide dispute *127 exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative.[10] A worker's compensation judge is given great discretion in finding that penalties are due and this discretion will not be overturned unless it is clearly wrong.[11] The test to determine whether the employee's right to benefits was reasonably controverted is whether, given the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant.[12]
In the present case, ADM denied benefits based on the statement submitted by Ms. Ruff, and its determination that Mr. Parker had forfeited benefits under R.S. 23:1208. The only medical information available to ADM advised that Mr. Parker was not released for work during the critical period, there is no other medical information to the contrary, and there was not sufficient factual information upon which ADM could have reasonably controverted the claim. ADM does not deny that the accident occurred. The record does not disclose a basis for a reasonable belief that benefits were not due. Further, the medical information in the record shows that Mr. Parker has still not been medically released to return to his former occupation. ADM does not allege as error the finding that Mr. Parker is entitled to supplemental earnings benefits and its liability for lumbar surgery recommended by Dr. Steiner. An unjustified belief that an employee's injury did not result from an accident does not excuse failure to pay worker's compensation benefits.[13] There must be a real or substantial issue to deny benefits to a disabled employee.[14] There is no such issue in this case.
Mr. Parker has answered the appeal requesting an increase in attorney fees. When the defendant in a worker's compensation case appeals and obtains no relief, and when the appeal has necessitated additional work on the part of plaintiff's counsel, the appellate court usually awards an increase in attorney fees, provided that the plaintiff has requested the increase in accordance with proper appellate procedure.[15] We find that an additional award of attorney fees in the amount of $1500.00 is warranted in the present case.
For the foregoing reasons, the judgment on appeal is affirmed. Mr. Parker is granted an additional $1500.00 in attorney fees. All costs of appeal are assessed to ADM.
AFFIRMED.
NOTES
[1] Tuminello v. Girling Health Care Inc. 98-977 (La.App. 5th Cir.1/26/99), 731 So.2d 316, 318, citing Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, 9.
[2] Tuminello, supra.
[3] Louisiana Workers' Compensation Corp. v. Gray, 34,731 (La.App. 2nd Cir.5/9/01), 786 So.2d.310, 315; KLLM, Inc. v. Reed, 2000-295 (La.App. 3rd Cir.10/12/00), 771 So.2d 728, 731.
[4] KLLM, Inc. v. Reed, supra; Resweber v. Haroil Const. Co., supra.
[5] See Gray v. Prince Dump Truck Service, 00-1925 (La.App. 5th Cir.4/24/01), 785 So.2d 1018.
[6] McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986); Bullard v. State, Dept. of Transp. and Development, 99-1942 (La.App. 1st Cir.11/5/99), 744 So.2d 212, 215; writ denied 99-3468 (La.2/11/00), 754 So.2d 939.
[7] Resweber v. Haroil Const. Co., supra at p. 16.
[8] Id.
[9] See Trapani v. Domino Sugars, 95-2529 (La. App. 4th Cir.6/5/96), 675 So.2d 1211 at 1214.
[10] J.E. Merit Constructors, Inc. v. Hickman, XXXX-XXXX (La.1/17/01), 776 So.2d 435, 438.
[11] Everson v. Kaiser Aluminum & Chemical Corp., 00-1264 (La.App. 5th Cir.3/28/01), 783 So.2d 544, 547.
[12] Ziegler v. Bagby Construction/LWCC 99-1120 (La.App. 5 Cir. 4/25/00), 760 So.2d 513, 521; writ denied 200-1458 (La.6/30/2000), 766 So.2d 544.
[13] Nelson v. Roadway Exp., Inc., 588 So.2d 350 (La.1991); Ziegler v. Bagby Construction, supra.
[14] Nelson v. Roadway Exp., Inc., supra.
[15] Riser v. Acadiana Limousine Service, Inc., 96-1687 (La.App. 3rd Cir.4/30/97), 693 So.2d 330; Tillmon v. Thrasher Waterproofing XXXX-XXXX (La.App. 4th Cir.3/28/01), 786 So.2d 131.