| | | |
|---|---|---|
| **DAVID PIZZATI** | * | **NO. 2021-CA-0344** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **DS SERVICES OF AMERICA,** | * | |
| **INC. AND SAFETY NATIONAL** | | **FOURTH CIRCUIT** |
| **CASUALTY CORPORATION** | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 20-03196, DISTRICT "08"
HONORABLE Catrice Johnson-Reid, The Office of Workers' Compensation
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*
(Court composed of Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge
Dale N. Atkins)


Jean-Marc Bonin
Alexandre E. Bonin
R. Christian Bonin
BONIN LAW
4224 Canal Street
New Orleans, LA 70119

   COUNSEL FOR PLAINTIFF/APPELLANT


Keith J. Landry
ALLEN & GOOCH, A Law Corporation
2000 Kaliste Saloom Road, Suite 400
P.O. Box 81129
Lafayette, LA  70598-1129

   COUNSEL FOR DEFENDANT/APPELLEE


      **REVERSED AND REMANDED**
      **MARCH 23, 2022**

*DNA*
*RML*
*TGC*
This is a workers' compensation case. The principal issue presented on appeal is whether the Office of Workers' Compensation (hereinafter "OWC") erred in finding that the claimant/employee, David Pizzati (hereinafter "Claimant"), failed to meet his burden of proving that he sustained a work-related accident on March 17, 2020. Claimant appeals from two interlocutory judgments and a final judgment rendered by the OWC on January 25, 2021. One of the interlocutory judgments granted the "Motion to Strike Claimant's Pre-Trial Statement" filed by Claimant's employer, DS Services of America, Inc., (hereinafter "DS Services"), and its insurer, Safety National Casualty Corporation (hereinafter "Safety National"); and the other interlocutory judgment denied Claimant's "Opposed Motion to Continue Trial."[1] The final judgment, in pertinent part, determined that Claimant failed to prove a compensable accident within the course and scope of his employment.[2]

---

[1] In his "Opposed Motion to Continue Trial," which is discussed more fully throughout the Opinion, Claimant sought a continuance of the trial "so he may file an amended "1008 [] Disputed Claim for Compensation [] to allege . . . issues [that] arose after the filing of the original" claim.

[2] The final judgment also determined that Claimant failed to prove the allegations asserted in his 1008 Disputed Claim for Compensation or entitlement to the relief sought therein, including penalties and attorney's fees. However, Claimant seeks appellate review only from that part of

1

Exhibits admitted into evidence proved Claimant sustained a compensable accident. Hence, the OWC committed manifest error in finding that Claimant failed to prove a compensable work-related accident. Having determined that Claimant proved a compensable accident moots review of the interlocutory judgments for error. Accordingly, for the following reasons, we reverse the final judgment as to Claimant's failure to prove a compensable accident, and hereby remand the matter to the OWC to permit Claimant to file any other workers' compensation claims arising out of his March 17, 2020 accident as permitted by the workers' compensation statutes.

## FACTUAL AND PROCEDURAL HISTORY

### March 17, 2020 Injury and Initial Treatment

The record and exhibits admitted into evidence established the following facts. In March 2020, DS Services employed Claimant as a route sales representative, which job included the task of transporting loads of water products to businesses and residences. On March 17, 2020, Claimant notified his DS Services supervisor, Jeff Sullivan (hereinafter "Mr. Sullivan"), that he experienced a work-related injury to his lower back that day. A form titled "Workers Compensation – First Report of Injury or Illness," which was prepared by Claimant on March 17, 2020, provided that "[Claimant] alleges that approx[imately] 4 hours ago he stood up after sitting down for approx[imately] 15 minutes while planning out his route and he felt pain to his lower back which has worsened throughout the day."

---

the final judgment which concluded that Claimant did not prove a compensable accident occurred. Hence, our review shall be limited to that portion of the judgment.

2

After Claimant notified Mr. Sullivan of his injury on March 17, 2020, Mr. Sullivan advised Claimant to go for treatment at Concentra Medical Centers (LA) (hereinafter "Concentra"). That same day Claimant reported to Dr. Lawrence Counts, M.D., (hereinafter "Dr. Counts") at Concentra and presented with right-sided back pain. The "History of Present Illness" section of Dr. Counts' report from Claimant's March 17, 2020 visit provided that "[t]his injury is the result of [a patient] with [a history of] sciatica [who] developed acute right low back pain radiating down his right leg and glute. It occurred while at work." Per the report, Dr. Counts "advised [Claimant] to follow [] prescribed work restrictions to avoid the risk of prolonged injury and worsening/reoccurrence of his current injury[.]" Thus, Claimant returned to work on restricted duty.

*April 8, 2020 Notice of Layoff*

On April 8, 2020, Claimant received from DS Services a "Notice of Layoff" letter, which advised that he had been laid off because of "changes in business conditions." The letter explained that Claimant's last day of work was that day, April 8, 2020, and that his layoff was effective April 10, 2020. Additionally, the letter advised that Claimant would be eligible for unemployment benefits.

*May 26, 2020 Filing of Disputed Claim for Compensation*

Thereafter, on May 26, 2020, Claimant filed a Louisiana Workers' Compensation Disputed Claim for Compensation (Form 1008) (hereinafter "1008 Form"),[3] wherein he alleged that he injured his lower back on March 17, 2020. On

---

[3] Louisiana Revised Statute 23:1310 pertains to the "[i]nitial filing of claim with office of workers' compensation administration," and it provides:

  A. If, at any time after notification to the office of the occurrence of death or injury resulting in excess of seven days lost time, a bona fide dispute occurs, the employee or his dependent or the employer or insurer may file a claim with

3

the 1008 Form, Claimant stated he was lifting and carrying water products on the morning of the accident and that he experienced the onset of pain in his lower back while stepping off of his work vehicle.  He advised that a bona fide dispute existed because no wage benefits had been paid; his disability status was temporary total disability (hereinafter "TTD")[4]; and that he sought all penalties, attorney's fees, costs, and interest as allowed by law for the failure of DS Services and Safety

---

the state office, or the district office where the hearing will be held, on a form to be provided by the assistant secretary.

B. In addition to any other information required by the assistant secretary, the claim shall set forth the time, place, nature, and cause of the injury, the benefit in dispute, and the employee's actual earnings, if any, at the time of the filing of the claim with the office.

[4] Louisiana Revised Statute 23:1221(1)(a)(b)(c) defines TTD and outlines a claimant's entitlement to same as follows:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:

**(1) Temporary total.**

(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.

(b) For purposes of Subparagraph (1)(a) of this Paragraph, compensation for temporary disability shall not be awarded if the employee is engaged in any employment or self-employment regardless of the nature or character of the employment or self-employment including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain.

(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

4

National (hereinafter collectively "Employer") to pay wage benefits. Claimant did not allege any dispute(s) involving his medical treatment or choice of physician. Additionally, Claimant listed his average weekly wage as $1,425.00 and his compensation rate as $688.00 per week.

*July 6, 2020 Answer and Pre-Trial Statement Filed by Employer*

In an Answer filed on July 6, 2020, Employer denied the general allegations of Claimant's 1008 Form. Also on July 6, 2020, Employer filed a Pre-Trial Statement, wherein Employer stipulated that Claimant was an employee on the date of the alleged accident. In the Pre-Trial Statement, Employer listed the issues to be litigated as including whether Claimant was injured in a work accident; the extent of the alleged injury and any on-going disability; and Claimant's entitlement to TTD benefits.

*September 3, 2020 Scheduling Conference*

The OWC conducted a Scheduling Conference on September 3, 2020. Pursuant to that conference, the OWC ordered scheduling deadlines, which included the following:

a. **TELEPHONE Pre-Trial Conference** is/is not being scheduled. If one is desired, a motion can be sent in requesting it to be set.

b. **AMENDMENT** to pleading date: **60 days prior to TRIAL.**

c. **DISCOVERY CUT-OFF COMPLETION** date: **45 days prior to TRIAL.**

d. **PRE-TRIAL STATEMENT** due date: Pre-Trial statements shall be filed by the parties in accordance with the Louisiana Workers' Compensation Administration Hearing Rules: **45 days prior to TRIAL.**

e. **VOLUNTARY PRE-TRIAL MEDIATION** is set [for] October 26, 2020[,] at 11:00 a.m.

5

f. **TRIAL** is set for December 11, 2020[,] at 9:00 a.m. Motions to continue trial on the merits shall be filed in accordance with the Louisiana Workers' Compensation Administration Hearing Rules and the Louisiana Code of Civil Procedure. In the event the trial on the merits is continued, all scheduling deadlines set forth above shall be applicable without further order.

*October 7, 2020 Deposition of Claimant*

Employer deposed Claimant on October 7, 2020. During the deposition, Claimant testified that, on March 17, 2020, "[he] walked out [his] truck like [he] normally do[es], and [he] felt a sharp pain and it was unbearable. It was worse than before.[5] [He] did continue to work the rest of the day." Claimant explained that at the end of his shift, he reported the pain to Mr. Sullivan, who directed him to go to Concentra, and that he went to Concentra as advised on the same day as the accident. Additionally, Claimant testified that he eventually discontinued treatment with Concentra and began receiving treatment at LA Health Solutions. He testified that he provided the same information about the accident and his pain to LA Health Solutions as he did to Concentra.

Regarding his ability to work, Claimant disclosed that he had returned to work as of August 2020. He testified that he earned $1,700.00 per week as a general manager of Creole Investments, a company he co-owned.

Claimant also testified that he applied for unemployment benefits roughly two days after he was laid off. He testified that he began receiving weekly unemployment benefits from May 2020 through the end of July 2020 at a rate of

---

[5] Claimant testified that he had prior accidents in August 2019 and January 2020, both of which involved injury to his back that resulted from pushing carts filled with five-gallon water bottles. He said he did not report the August 2019 accident nor did he seek treatment following that accident. However, Claimant testified that he reported the January 2020 accident to Mr. Sullivan, who advised him to go to Concentra for treatment.

$847.00 per week. Claimant explained that, after July 2020, he started to earn $1,700.00 per week from his aforementioned job at Creole Investments.

***October 27, 2020 Pre-Trial Statement Filed by Claimant***

The parties attended a voluntary pre-trial mediation conference on October 26, 2020, at which they did not resolve their differences. The following day, October 27, 2020, Claimant fax-filed his Pre-Trial Statement. Claimant's Pre-Trial Statement included the following:

II. ISSUES TO BE LITIGATED

    A. Whether Claimant was involved in an on the job accident on March 17, 2020[,] that caused or aggravated the injuries for which he continues to suffer.

    B. Whether Employer is required to pay TTD or [Supplemental Earnings Benefits (hereinafter "SEB")] indemnity benefits from the time benefits were forfeited.

    C. Whether Employer is required to pay all outstanding medical bills.

    D. Whether Employer is required to pay all future medical treatment related to Claimant's injury.

    . . . .

III.   STATEMENT OF THE CASE

    A. On March 17, 2020, Claimant, David Pizzatti, injured his lower back in an accident while in the course and scope of his employment.

    B. Claimant is unable to return to the same type of work which he was capable of prior to the accident.

    C. Employer is liable for paying all reasonable and necessary medical care associated with Claimant's lower back injury.

    D. Employer was arbitrary and capricious in denying medical treatment and indemnity benefits.

7

*November 9, 2020 Motion to Strike Claimant's Pre-Trial Statement*

On November 9, 2020, Employer filed a "Motion to Strike Claimant's Pre-Trial Statement" (hereinafter "Motion to Strike"). In the Motion to Strike, Employer argued as untimely those issues in Claimant's Pre-Trial Statement regarding Claimant's demand for SEB indemnity benefits; Employer's obligation to pay all outstanding medical bills and future medical treatment; Employer's liability to pay all reasonable and necessary medical care associated with Claimant's lower back injury; and whether Employer was arbitrary and capricious in denying medical treatment. Employer argued that Claimant had not previously identified those issues as disputed issues in his 1008 Form or in any timely-filed supplemental and amending pleadings.

*November 12, 2020 Opposed Motion to Continue Trial*

On November 12, 2020, Claimant filed an "Opposed Motion to Continue Trial" (hereinafter "Motion to Continue") wherein he "move[d] that the trial in this matter be continued so he may file an amended [1008 Form] to allege [Employer's] failure to pay medical benefits and [Claimant's] entitlement to penalties, attorney's fees, costs, and interest as these issues arose after the filing of the original 1008 [Form]." In the Motion to Continue, Claimant explained that he received from LA Health Solutions a "Medical Guidelines Dispute Decision," which was dated November 2, 2020, and provided that "chiropractic treatment to the lumbar spine 2-3 times a week for 6 weeks (12-18 weeks)" is covered by the medical treatment schedule. Claimant explained that, alongside the Medical Guidelines Dispute Decision, LA Health Solutions submitted a Louisiana Workers' Compensation "Form 1010 - Request of Authorization/Carrier or Self-Insured Response" (hereinafter "1010 Form") to Employer for approval on November 2,

8

2020. Claimant explained that despite the determination that the treatment was warranted under the treatment schedule, Employer denied Claimant's 1010 Form on November 9, 2020.

*November 20, 2020 Memorandum in Opposition to Motion to Strike*

Thereafter, on November 20, 2020, Claimant filed a "Memorandum in Opposition to [Employer]'s Motion to Strike" (hereinafter "Memorandum in Opposition"). In his Memorandum in Opposition, Claimant argued that the new issues related to disputes surrounding Claimant's entitlement to medical treatment and payment of his medical expenses emerged only after Employer's November 9, 2020 formal refusal to authorize the latest treatment requests from Claimant's chiropractors,[6] notwithstanding that the requested treatment had been approved by the OWC Medical Director. Claimant iterated that on the day after receipt of Employer's formal refusal of the chiropractic treatment, he promptly filed his previously discussed Motion to Continue. He contended that, inasmuch as he had timely responded to these new developments, the OWC should deny Employer's Motion to Strike, or alternatively, grant Claimant's Motion to Continue in order to give him the opportunity to amend and supplement his original 1008 Form to raise these new issues.

---

[6] Claimant referenced that a July 14, 2020 request for chiropractic care sought authorization for 2-3 visits per week over a six-week period. That request received modified approval by Employer for 2-3 visits over a 3-week period. The chiropractor's latest requests for treatment, asking for approval of treatment for 2-3 times per week over a six-week period, were made on July 14, 2020; October 5, 2020; October 6, 2020; and November 2, 2020. The OWC Medical Director approved the treatment on November 2, 2020.

9

***December 11, 2020 Trial***

A. *Resolution of Pending Motions*

Before the December 11, 2020 trial commenced, the OWC heard the parties' arguments regarding the pending Motion to Strike and Motion to Continue.[7] With reference to its Motion to Strike, Employer re-urged that Claimant's Pre-Trial Statement improperly added medical and SEB issues that were not alleged in the initial 1008 Form, which was essentially a claim for TTD benefits. Employer maintained that Claimant had sufficient time to raise any disputed chiropractor/medical treatment claims because Employer had contested the scope of Claimant's chiropractic treatment as early as May 2020.

Claimant reiterated that the dispute did not arise until November 9, 2020, which is the date that Employer denied the latest request for chiropractic treatment; and Claimant emphasized that Employer's denial occurred thirty days after the period to timely amend and supplement pleadings. Therefore, Claimant moved to continue the trial so that he could amend and supplement the 1008 [Form] should the OWC grant Defendant's Motion to Strike.

---

[7] Regarding the outstanding Motion to Strike and Motion to Continue, at the commencement of the December 11, 2020 trial, the OWC judge explained:

> [W]e had a motion, [Employer's] [M]otion to [S]trike which was set on November 30th, 2020. At that hearing, it was the Court's understanding that a motion to dismiss the 1008 [Form] would follow. One was circulated, was not agreed upon, and, ultimately withdrawn by [C]laimant's counsel. So hearing that, we have to go back and hear argument on [Employer]'s [M]otion to Strike and then [C]laimant's [M]otion to [C]ontinue trial, and if we get that far, trial.
>
> . . . .
>
> [L]ike I stated, we were here on November 30th on [Employer]'s [M]otion to [S]trike. It was the Court's understanding that that would be, the 1008 [Form] would be dismissed, thereby making that [M]otion to [S]trike moot. However, the motion to dismiss was withdrawn by [Claimant]'s counsel, so I guess [we are] back here on [Employer]'s [M]otion to [S]trike.

In granting Employer's Motion to Strike and denying Claimant's Motion to Continue, the OWC espoused the following:

> I [do not] think [it is] appropriate for you to bring in new issues in a pre[-]trial statement. I think that is unfair to opposing counsel regarding the progress or the track of this case. As stated by [counsel for Employer], you had two options if you had a problem with how it is to proceed. I [do not] think a motion to continue the trial was the appropriate procedural tactic that you should have used. You should have, like he said, filed either a new 1008 [Form] or tried to amend the 1008 [Form] [that is] already in existence here. I [do not] think filing a . . . motion to continue this trial is the . . . appropriate avenue in this matter.

Thereafter, Claimant and Employer offered into evidence their respective exhibits on the pre-trial motions. The OWC denied Employer's request to admit Claimant's deposition into evidence, agreeing with Claimant's counsel that the deposition was not relevant in deciding the pre-trial motions. After the OWC admitted the exhibits into evidence, the OWC announced the matter was ready for trial.

B. *Trial*

At the start of the trial on the merits, Claimant's counsel submitted on the record and did not offer testimony from Claimant. The following colloquy occurred after the OWC asked counsel if Claimant was going to testify:

> [COUNSEL FOR CLAIMANT]:
>
> > Judge, I spoke with my client and as to the issues presented in the disputed claim for compensation which was filed in May of 2020 with respect to indemnity and any outstanding attorney's fees that may be associated therewith, the claimant will submit on the Record.
> >
> > . . . .
> >
> > [We are] not offering any testimony as to the indemnity issues and the issues allowed in this trial. For the record, no medical issues are being allowed in this trial, therefore, we are not offering any testimony as to that.

11

In response to the revelation that Claimant would not testify, Employer argued for a directed verdict, contending in part, that Claimant had failed to prove he suffered a compensable accident:

[COUNSEL FOR EMPLOYER]:

Okay. Judge, well then [I am] going to have to move for a judgment on the pleadings. There is an issue in my pre[-]trial statement whether there was an accident. [There is] no proof that there was an accident. In fact, in . . . the deposition testimony that I introduced, it just says "[I was] stepping down," and "I hurt." He [does not] have any proof that there was an accident. He [does not] have any witnesses, and there were plenty of witnesses that he could have called in accordance with his discovery, [he has] got I think about seven or eight people listed that would support his position that he had an accident. [There is] not even proof of an accident that has been submitted and . . . [h]e just made his submission on the issue of whether or not [Claimant] is entitled to [TTD] and [that is] the only thing the 1008 [Form] shows.

Employer's counsel also argued that Claimant was not entitled to indemnity benefits because he received unemployment benefits and presently received income from his business. In response, Claimant's counsel stipulated that Claimant was not entitled to TTD benefits at this time, asserting the following:

[COUNSEL FOR CLAIMANT]:

Judge, we are submitting on the Record that [Claimant is] not entitled to TTD at this time, and he has not been since the date of this accident because he was able to recover unemployment.

THE [OWC]:

Okay, so if that is the case, then I would think that penalties, attorney's fees, costs, and interest[] would go hand in hand with that since it was filed with the dispute. Correct?

[COUNSEL FOR CLAIMANT]:

Correct.

THE COURT:

So the only thing [that is] left in there is no wage benefits have been paid.

[COUNSEL FOR EMPLOYER]:

Right, because [there is] nothing owed.

THE [OWC]:

Right. So in a sense the whole 1008 [Form] should be dismissed.

After Employer's argument that Claimant failed to prove a compensable accident, Claimant's counsel asked to offer exhibits into evidence as proof of the accident. The OWC responded that "[I am] not addressing the proof of the accident. . . . [I am] dismissing the 1008 [Form] that was filed on May 26th, 2020." Nevertheless, the OWC permitted Claimant to offer as exhibits the 400-plus page, certified medical records from the chiropractor, LA Health Solutions, as well as Employer's responses to Claimant's discovery requests.

Employer's counsel objected to the medical records exhibit. He complained that he may not have received all of the documents in the exhibit; the records were not submitted until the eve of trial; and that he was unsure as to the content of the voluminous exhibit. Claimant's counsel countered that the medical records exhibit had originally been submitted on December 1, 2020, and that the exhibit was only re-submitted the day before trial when Employer alleged it had not been received. Over Employer's counsel's objection, the OWC admitted Claimant's medical records exhibit into evidence.

The OWC permitted Employer to admit into evidence Claimant's previously excluded deposition, Claimant's "Notice of Layoff" letter, and Facebook pictures of Claimant.

After the OWC reiterated that Claimant's 1008 Form was being dismissed with prejudice, Employer's counsel asked for clarification regarding Employer's argument that Claimant had failed to prove a compensable accident. Employer's counsel emphasized that proof of accident was one of the issues to be litigated as included in both Claimant's and Employer's Pre-Trial Statements.

In response, the OWC acknowledged that Claimant had the burden to prove he suffered an accident. The OWC then opined to Claimant's counsel that "[y]ou [have not] proved that [Claimant] had an accident." Claimant's counsel urged the OWC to review the medical records and Claimant's deposition as proof of the accident. When Claimant's counsel noted that the OWC had previously stated that it was not going to address proof of the accident, the OWC responded, "[I have] changed my mind." Claimant's counsel asked the OWC to review the exhibits, and the OWC advised that it had already reviewed the exhibits that had been submitted into evidence.

### *January 25, 2021 Judgment*

The OWC rendered written judgment on January 25, 2021, providing, in relevant part, the following:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that claimant has failed to [prove] a compensable accident with[in] the course and scope of employment in accordance with the Worker's compensation laws of the State of Louisiana;
>
> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that claimant failed to prove the allegations of his 1008 or relief sought in the Disputed Claim for Compensation, including penalties and attorney fees.
>
> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that this 1008 Disputed Claim for Compensation is hereby dismissed with prejudice at the claimant's costs.

14

On January 25, 2021, the OWC also signed the judgments granting Employer's Motion to Strike and denying Claimant's Motion to Continue.

Claimant timely filed a motion for devolutive appeal from these judgments, and this appeal follows.

## STANDARD OF REVIEW

"In workers' compensation cases, appellate courts must apply the manifest error or clearly wrong standard of review to the factual findings of a [workers' compensation judge]." *Hebert v. Fresh Mkt.*, 2019-0412, 2019-0338, p. 6 (La. App. 4 Cir. 9/18/19), 280 So.3d 756, 764 (citing *Marti v. City of New Orleans*, 2012-1514, p. 16 (La. App. 4 Cir. 4/10/13), 115 So.3d 541, 552). The Louisiana Supreme Court has announced a two-part test for the reversal of a factfinder's determination: 1) an appellate court must find from the record that a reasonable factual basis does not exist for the factfinder's determination; and 2) an appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993). Additionally, this Court has explained:

> A claimant in a workers' compensation case has the burden of proving a work-related accident by a preponderance of the evidence. *Millon v. Clarion Hotel,* [19]98-0002, p. 3 (La. App. 4 Cir. 9/16/98), 719 So.2d 568, 570. Proof by a preponderance of the evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. *Id.* In determining whether the worker has discharged his or her burden of proof, the trial court should accept as true a witness's uncontradicted testimony, although the witness is a party, absent "circumstances casting suspicion on the reliability of this testimony." *Bruno v. Harbert International, Inc.,* 593 So.2d 357 (La.1992), citing *West v. Bayou Vista Manor, Inc.,* 371 So.2d 1146, 1147 (La.1979), and *Holiday v. Borden Chemical,* 508 So.2d 1381, 1383 (La.1987). The trial court's determinations as to whether the worker's testimony is credible and whether the worker has discharged his or her burden of proof are factual determinations not to be disturbed on review unless clearly wrong or absent a showing of manifest error. *Id.*

15

*Maiurano v. Carriere-Stumm, Inc.*, 2007-0225, p. 2 (La. App. 4 Cir. 10/24/07), 970 So.2d 652, 654

## ASSIGNMENTS OF ERROR

Claimant asserts three assignments of error for review:

1. The [OWC] abused [its] discretion in the confluence of [its] two interlocutory rulings which prevented [Claimant] from having a full and fair opportunity to timely present facts concerning his known medical claims.

2. The [OWC] committed legal error when [it] reversed [itself] after having first limited the trial issues to indemnity-related issues, upon which ruling [Claimant] relied in the presentation of his case, and [in] "changing [its] mind" to decide an issue excluded by [it] and then find[ing] that [Claimant] failed to prove an on-the-job accident.

3. Alternatively, the OWC was clearly wrong in finding that there was insufficient proof of an on-the-job accident and dismissing with prejudice [Claimant]'s claim on that basis.

## DISCUSSION

### *Interlocutory Judgments/Jurisdiction*

Prior to addressing the merits of Claimant's assignments of error, this Court notes that Employer asserts that the January 25, 2021 judgments granting Employer's Motion to Strike and denying Claimant's Motion to Continue are interlocutory and not appealable. Further, Employer asserts Claimant did not timely file an application for supervisory writs with this Court, and that Claimant's appeal of the interlocutory judgments is untimely to convert to a writ application.[8]

---

[8] In providing the time to file a writ application in the appellate court, Rule 4-3, Uniform Rules-Courts of Appeal states, in part, that "[t]he return date in civil cases shall not exceed 30 days from the date of notice, as provided in La. C.C.P. 1914."

"A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment. A judgment that determines the merits in whole or in part is a final judgment." *Soileau v. Churchill Downs La. Horseracing Co., L.L.C.*, 2021-0022, p. 41 (La. App. 4 Cir. 12/22/21), ___ So.3d ___, 2021 WL 6065753, at *17 (quoting La. C.C.P. art. 1841). "Notably, 'an interlocutory judgment is appealable only when expressly provided by law.'" *Id.* (quoting La. C.C.P. art. 2083(C)). Here, the January 25, 2021 judgments granting the Motion to Strike and denying the Motion to Continue determined preliminary matters and not the merits; as such, they are interlocutory judgments.[9] Further, there is no law that expressly provides the right to appeal the granting of a motion to strike and the denial of a motion to continue. Thus, Employer properly maintains the two judgments are interlocutory judgments and that an application for supervisory writ is the proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable. *See Schwarzenberger v. La. State Univ. Health Scis. Ctr.-New Orleans*, 2018-0480, p. 6 (La. App. 4 Cir. 10/3/18), 318 So.3d 111, 114.

"It is well-settled that although an interlocutory judgment may not itself be immediately appealable, it is nevertheless subject to review by an appellate court when an appealable judgment is rendered in the case." *Elysian, Inc. v. Neal Auction Co.*, 2020-0674, p. 9 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1083 (citing *People of the Living God v. Chantilly Corp.*, 207 So.2d 752, 753 (1968); *Phillips v. Gibbs*, 2010-0175, p. 4 (La. App. 4 Cir. 5/21/10), 39 So.3d 795, 798)).

---

[9] *See Elysian, Inc. v. Neal Auction Co.*, 2020-0674, pp. 8-9 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1083, wherein this Court determined that the judgments denying the appellees' special motion to strike were non-appealable, interlocutory judgment. *See also Barham, Warner & Bellamy, L.L.C. v. Strategic Alliance Partners, L.L.C.*, 2009-1528, p. 3 (La. App. 4 Cir. 5/26/10), 40 So.3d 1149, 1151, wherein this Court concluded that that the denial of a motion to continue is an interlocutory judgment.

"[A]n appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to them, in addition to review of the final judgment when an unrestricted appeal is taken." *Treas v. Koerner*, *unpub.*, 2019-0390, p. 11 (La. App. 4 Cir. 11/13/19), 2019 WL 5982386, at *5 (quoting *Maqubool v. Sewerage & Water Bd. of New Orleans*, 2018-0572, p. 3 (La. App. 4 Cir. 11/14/18), 259 So.3d 630, 632-33). In this matter, the OWC rendered a final judgment on January 25, 2021, dismissing Claimant's 1008 Form. Claimant sought an unrestricted appeal of the final judgment. Clearly, the two interlocutory judgments rendered on the same day as the final judgment are both adversarial to Claimant. Thus, this Court's appellate jurisdiction is properly invoked and we may review all three judgments.

### Assignments of Error Numbers 2 and 3 - Proof of Compensable Accident

We commence our review by considering Claimant's second and third assignments of error. Claimant's third assignment of error concerns whether the OWC erred in finding that Claimant failed to prove a work-related or compensable accident (hereinafter "compensable accident"). In particular, we address Claimant's third assignment of error out of order because we find its resolution dispositive of any alleged errors assigned to the interlocutory judgments.

"The threshold requirement an employee in a workers' compensation case must establish is 'personal injury by *accident* arising out of and in the course of his employment.'" *Marti*, 2012-1514, p. 18, 115 So.3d at 553 (quoting La. R.S. 23:1031).

Claimant's argument that the OWC improperly concluded he did not prove a compensable accident generally falls within two categories. First, he argues that proof of a compensable accident was beyond the scope of issues for review by the

18

OWC. Claimant maintains the OWC improperly reversed itself to allow Employer to raise the issue of proof of a compensable accident when the OWC previously "ruled" it would not do so. Claimant suggests that this alleged "reversal" by the OWC limited his case presentation. Second, Claimant contends that the OWC was clearly wrong in finding that the exhibits offered into evidence were insufficient to satisfy Claimant's burden to prove a compensable accident. Each of these is addressed in turn.

A. *Assignment of Error Number 2 - The OWC's Inclusion of Proof of Accident Issue*

Claimant's argument that he was prejudiced by the OWC's "self-reversal" of its "ruling" that proof of accident would not be considered as a trial issue is not supported by the record. Factually, the trial transcript shows the OWC never issued a direct ruling precluding proof of accident as a trial issue. As previously noted, the OWC indicated that it was not considering proof of an accident as an issue when Claimant initially attempted to introduce certain exhibits into evidence to contest Employer's claim that Claimant had failed to offer proof of an accident. Moreover, the record does not support that the OWC's comments on the proof of accident issue limited the presentation of Claimant's case. To the contrary, Claimant had already submitted his case on the record before the comments were made. Additionally, notwithstanding the OWC's initial declaration that it would not address proof of an accident as an issue, the OWC permitted Claimant, along with Employer, to offer exhibits into evidence that went to proof of accident. In particular, these exhibits included Claimant's medical records exhibit and Claimant's deposition testimony exhibit, the latter of which Employer introduced into evidence. Claimant identifies no other evidence that Claimant intended to

introduce "but for" the OWC's decision to later address proof of accident as a trial issue.

We disagree with Claimant's assertion that the judgment granting Employer's Motion to Strike and thereby limiting the trial on the merits to the indemnity issues Claimant raised in his initial 1008 Form equates to a ruling to exclude proof of accident as a trial issue. Indeed, the record reveals that both parties listed whether or not an accident had occurred as one of the issues to be litigated in their respective Pre-Trial Statements. As urged by Employer, Louisiana jurisprudence acknowledges that La. R.S. 23:1031[10] provides that a threshold requirement for a worker in a compensation claim is to establish "personal injury by *accident* arising out of and in the course of his employment." *See Bruno v. Harbert Int'l, Inc.,* 593 So.2d 357, 360 (La. 1992) (quoting La. R.S. 23:1031). Accordingly, a worker always carries the burden of proof to establish a work-related accident in any workers' compensation dispute. Thus, the OWC was well within its discretion to consider proof of a compensable accident as a trial issue. Claimant's argument is unpersuasive. We now consider whether Claimant met his burden of proof to establish a compensable accident occurred.

B. *Assignment of Error Number 3 - Compensable Accident Evidence*

Claimant primarily contends that his deposition testimony and the medical records exhibit that were admitted into evidence proved he had a compensable accident, notwithstanding Claimant's failure to testify at trial.[11] Claimant relies on the following: (1) his uncontradicted deposition testimony described his accident;

---

[10] Louisiana Revised Statute 23:1031(A) states that "[i]f an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."

[11] Claimant also introduced into evidence Employer's discovery responses.

(2) he immediately reported the March 17, 2020 accident to his supervisor; (3) he sought immediate medical treatment; (4) documents contained within Claimant's medical records exhibit corroborate treatment consistent with injuries arising out of the reported accident; and 5) his medical records exhibit also documents that one of his medical providers, LA Heath Solutions, filed formal claims seeking approval for medical treatment related to injuries sustained in the accident. However, Employer counters that Claimant's deposition testimony and Claimant's medical records are inadmissible evidence that do not provide proof of an accident in light of Claimant's failure to testify at trial. We first examine Employer's objections to the admissibility of Claimant's deposition testimony and medical records evidence prior to review of the sufficiency of that evidence as proof that Claimant had a compensable accident.

1. *Employer's Admissibility Objections*

Employer argues that Claimant's deposition testimony cannot be considered as admissible evidence to prove that he had an accident because Claimant failed to comply with the prerequisites outlined in La. C.C.P. art. 1450(A)(3) for use of a deposition at trial in lieu of live testimony. These prerequisites include that the witness is unavailable for trial; resides at a distance more than 100 miles from the place of trial; or that the use of the deposition in lieu of live testimony serves the interest of justice. La. C.C.P. art. 1450(A)(3).[12] Claimant does not contend that he

---

[12] Louisiana Code of Civil Procedure Article 1450(A)(3) is titled "[u]se of depositions," and it provides:

> A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the

21

satisfied any of the La. C.C.P. art. 1450(A)(3) criteria to have his deposition used at trial in lieu of his live testimony. Instead, Claimant asserts that his deposition testimony was admissible at trial because Employer offered the deposition testimony into evidence. We agree.

The record establishes that the OWC initially denied Employer's request to introduce Claimant's deposition into evidence at the conclusion of the hearing on the pre-trial motions, noting that Claimant's deposition testimony was not relevant to its disposition on the Motion to Strike or the Motion to Continue. At the conclusion of the trial on the merits, however, Employer again asked to admit Claimant's deposition into evidence. In response, the OWC admitted Claimant's deposition into evidence as one of Employer's exhibits. No objections were raised by either party nor were any limitations placed on the consideration of Claimant's deposition as evidence.

A party, by its own actions, may be estopped from raising objections to the exclusion or inclusion of evidence. *Combs v. Hartford Ins. Co.*, 544 So.2d 583,

---

deposition or who had reasonable notice thereof, in accordance with any of the following provisions:

. . . .

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:

(a) That the witness is unavailable;

(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or

(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

585 (La. App. 1 Cir. 1989) (quoting *Acosta v. Lea*, 56 So.2d 201 (La. App. 1 Cir. 1952)). In *Combs*, the plaintiff's attorney asked the trial court to admit certain photographs into evidence and used the photographs as part of his case in chief. *Id.*, 544 So.2d at 585. On appeal, the plaintiff questioned the photographs' authenticity. *Id.* The appellate court found that the plaintiff could not assign as error the inclusion of his own evidence. *Id.* Moreover, in *Hope v. Gordon*, 186 La. 697, 702, 173 So. 177, 178 (La. 1936), the Supreme Court held that a "defendant's objection to a document offered in evidence by plaintiff was waived by defendant's subsequent offer in evidence of the document which he had sought to exclude." In the case *sub judice*, Employer twice requested that Claimant's deposition testimony be admitted into evidence—during the hearing on the pre-trial motions and during the trial. Employer maintained that Claimant's deposition was relevant at trial to show that Claimant was not entitled to indemnity benefits. Hence, Employer cannot now object to the inclusion of its own evidence, i.e., Claimant's deposition, for review on appeal.

Employer next argues that Claimant's medical records exhibit is inadmissible evidence because the notations of the medical providers and any other reports within the exhibit constitute hearsay as defined by La. C.E. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." This argument is also unpersuasive. We first note that Employer failed to raise a hearsay objection at trial. Instead, Employer's objection focused on the timeliness of Employer's receipt of the exhibit and the opportunity of defense counsel to adequately review the voluminous contents of the exhibit. Notwithstanding, the hearsay objection does not apply to preclude the introduction of Claimant's

23

medical records exhibit. Louisiana Revised Statute 13:3714(A) provides the following:

> Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, . . . certified or attested to by the state health care provider or the private health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents . . . .

The purpose of La. R.S. 13:3714 is to save litigants the expense and difficulty associated with producing each witness who assisted in a patient's care, and thereby it provides an exception to the hearsay rule. *See Zavala v. St. Joe Brick Works*, 2007-2217, pp. 3-4 (La. App. 1 Cir. 10/31/08), 999 So.2d 13, 17 (citing *Judd v. State, Dep't of Transp. & Dev.*, 1995-1052, p. 3 (La. 11/27/95), 663 So.2d 690, 693). Here, the medical records introduced were certified; and, as such, they are an exception to the hearsay rule.

Moreover, La. R.S. 23:1317(A) establishes, in part, that the OWC "shall not be bound by technical rules of evidence" when its findings of fact are premised on "competent evidence."[13] Thus, the OWC has the discretion to admit evidence that

---

[13] La. R.S. 23:1317(A) states the following:

> If an answer has been filed within the delays allowed by law or granted by the workers' compensation judge, or if no judgment has been entered as provided in R.S. 23:1316 at the time for hearing or any adjournment thereof, the workers' compensation judge shall hear the evidence that may be presented by each party. Each party shall have the right to be present at any hearing or to appear through an attorney. The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.

otherwise would be excluded under the Louisiana Code of Evidence. *See Zavala*, 2007-2217, p. 3, 999 So.2d at 16 (citing *Chaisson v. Cajun Bag & Supply Co.*, 1997-1225, p. 10 (La. 3/4/98), 708 So.2d 375, 381). This more relaxed evidentiary standard for workers' compensation claims was explained in *Richard v. Quality Constr. & Prod., LLC*, 2018-0965, p. 6 (La. App. 3 Cir. 6/5/19), 275 So.3d 328, 335 (quoting *Chaisson*, 1997-1225, p. 10, 708 So.2d at 381), as follows:

> This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable *and supported by competent evidence in the record*. Although the Legislature has not defined "competent evidence," in order to give the relaxed evidentiary standard in [La. R.S.] 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.

In the present matter, we find that Claimant's certified medical records exhibit and sworn deposition testimony constitute competent evidence. Therefore, Employer's objection to this Court's consideration of Claimant's deposition testimony and his medical records as proof of his accident because their admissibility allegedly does not comport with the Louisiana Code of Evidence is not meritorious. We now examine Claimant's contention that, substantively, his deposition testimony and medical records exhibit provided sufficient proof of a compensable accident.

2. *Evidence of a Compensable Accident*

Louisiana Revised Statute 23:1021(1) defines "[a]ccident" in a workers' compensation action as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." As discussed in *Bruno*, 593 So.2d at 360, established jurisprudence broadly construes the "accident" definition:

> Louisiana courts consistently have interpreted the work-related accident requirement liberally. *Williams v. Regional Transit Authority*, 546 So.2d 150, 156 (La. 1989). Indeed, it is well-settled that an "accident" exists when "heavy lifting or other strenuous efforts, although usual and customary, cause or contribute to a physical breakdown or accelerate its occurrence because of a pre-existing condition." *Cutno v. Neeb Kearney & Co.*, 237 La. 828, 112 So.2d 628, 631 (1959); *Nelson* [*v. Roadway Express Inc.*, 588 So.2d 350 (La. 1991)] (collecting cases). Moreover, Louisiana Courts view the question of whether there was an accident from the worker's perspective. *Williams*, *supra*.

Notwithstanding this liberal construction, however, the worker still retains the burden of proof of establishing a compensable accident by a preponderance of the evidence as plaintiffs in other civil actions. *Id.*, 593 So.2d at 361. "A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Id.* (citing *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146 (La. 1979); Wex S. Malone & H. Alston Johnson, III, *13 Louisiana Civil Law Treatise, Workers' Compensation Law & Practice*, § 253 (2nd ed. 1980)).

As to the first element, Claimant testified in his deposition that he had just completed a delivery on March 20, 2017, when he stepped out of his truck and felt a sharp pain in his back. At the outset, in accord with *Bruno*, 593 So.2d at 360, we note that Claimant's accident version meets the broad definition of an "accident" as construed under Louisiana's workers' compensation statutes. Claimant added that he worked until the end of his shift and then reported the accident to his supervisor, Mr. Sullivan. During his deposition, Claimant described his pain as a "nine out of ten" on March 20, 2017. Further, Claimant testified that Mr. Sullivan advised him to report for treatment that day at Concentra, where he subsequently treated until April 2020. Thereafter, Claimant stated that he sought treatment at LA Health Solutions. Claimant maintained that he provided LA Health Solutions with the same information about the accident and his pain as he had told Concentra.

Employer did not offer any evidence or produce witnesses to discredit or cast serious doubt upon Claimant's version of the accident or the injuries sustained. Similarly, the record is devoid of any indication that the OWC discounted the credibility of Claimant's deposition testimony. To the contrary, the record infers that the OWC concluded Claimant did not prove a compensable accident, in part, because Claimant did not testify at trial, as underscored by the following exchange between Claimant's counsel and the OWC:

[COUNSEL FOR CLAIMANT]:

Judge, the accident, proof of the accident is submitted in his medical records, as well as the deposition. . . .

THE [OWC]:

> You can put your client on, [Counselor]. If you thought that was going to be a problem, you should have put your client on.

Generally, a trial court's determinations as to whether the worker's testimony is credible are factual determinations that will not be disturbed on review unless clearly wrong or absent a showing of manifest error. *See Bruno*, 593 So.2d at 361 (citing *Gonzales v. Babco Farm, Inc.*, 535 So.2d 822, 824 (La. App. 2 Cir. 1988)). However, in the present matter, Claimant did not testify live at trial, and therefore, the OWC could not evaluate his demeanor, which is one of the usual factors used to evaluate credibility. Nonetheless, the OWC expressed to Claimant's counsel that it had reviewed all of the exhibits introduced into evidence, which included Claimant's deposition testimony and the medical records exhibit. Upon review, the OWC made no indication that the evidence revealed conflicts in Claimant's account of the accident. Having identified no evidence that contradicted Claimant's account of the accident, the OWC was compelled to accept as true Claimant's version of the accident as put forth in his uncontradicted deposition testimony. *See Maiurano*, 2007-0225, p. 2, 970 So.2d at 654. Thus, Claimant satisfied the first element to meet his burden of proof: no other evidence was offered to cast serious doubt on his version of the accident.

Claimant also satisfied the second element of his burden of proof by providing corroborating evidence to prove an accident occurred. Claimant's medical records exhibit supports his deposition testimony that he sought medical treatment at Concentra on the reported March 17, 2020 accident date as recommended by his supervisor Mr. Sullivan. Claimant's description of the accident and the injury that he gave to Concentra's health care providers is also consistent with his deposition testimony. Similarly, the medical records from LA

Health Solutions document that Claimant attributed his back complaints to an on-the-job accident that occurred on March 17, 2020.[14]

We now apply the two-part test required when using the manifest error/clearly wrong standard of review in workers' compensation claims: "1) an appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court; and 2) an appellate court must further determine the record establishes that the finding is clearly wrong or manifestly erroneous." *Hebert*, 2019-0412, 2019-0338, p. 6, 280 So.3d at 764 (citing *Stobart*, 617 So.2d at 882). This standard of review does not require an appellate court to affirm the trial court's refusal to accept as credible uncontradicted testimony, where the record indicates no sound reason to reject the testimony. *See Bruno*, 593 So.2d at 361. In the present matter, the record supports that Claimant's uncontradicted deposition testimony and his corroborating medical records were sufficient to meet his burden of proving a work-related accident. Thus, no reasonable factual basis exists in the record for the OWC's finding that Claimant did not prove a compensable accident. As such, the OWC's judgment that Claimant did not prove a compensable accident was manifestly erroneous and clearly wrong. This assignment of error is meritorious.

### Assignment of Error Number 1 - Judgments on Motion to Strike and Motion to Continue

Claimant asserts as his first assigned error the interlocutory judgments granting Employer's Motion to Strike and denying Claimant's Motion to Continue. Claimant argues that those judgments, combined with the OWC's ruling that he

---

[14] Employer's discovery responses also explain that, upon information and belief, Employer became aware that Claimant alleged that he had been involved in a work-related accident on March 17, 2020.

had failed to prove a compensable accident, permanently foreclosed Claimant's right to assert claims for medical benefits, treatment, and attorney's fees that had arisen subsequent to the cut-off dates prescribed by the OWC's Scheduling Order. An issue becomes moot when a judgment or decree on that issue has been deprived of practical significance. *See Soileau*,2021-0022, p. 39, ___ So.3d ___, 2021 WL 6065753, at *16. Our determination that the OWC erred in finding that Claimant failed to prove a compensable accident effectively restores Claimant's right to seek recovery for medical benefits, treatment, attorney's fees, and any other relief permitted under the workers' compensation statutes. Accordingly, we pretermit consideration of the merits of this assignment of error because the relief sought has become moot.

## DECREE

Based on the foregoing reasons, the judgment finding Claimant proved no compensable accident is reversed, and the matter is hereby remanded to the OWC to permit Claimant to file any other disputed claims for workers' compensation benefits arising out of his March 17, 2020 work-related accident as allowed by the workers' compensation statutory scheme.

**REVERSED AND REMANDED**